## No. 15,518.

ARCHIBALD, DOING BUSINESS AS LIND MOVING AND STORAGE
COMPANY *v.* PUBLIC UTILITIES COMMISSION ET AL.
(171 P. [2d] 421)

Decided June 24, 1946.    Rehearing denied July 22, 1946.

Mr. E. V. HOLLAND, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-
RENCE HINKLEY, Deputy, Mr. E. B. EVANS, Assistant, Mr.
TRUMAN A. STOCKTON, JR., Mr. ARTHUR A. BROOKS, JR.,
for defendants in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, who was plaintiff below and to whom we hereinafter refer as the applicant, seeks reversal of a judgment of the district court which dismissed his petition for review of an order of the Public Utilities Commission denying his application for an exemption from the law, or, in lieu thereof, a special permit allowing him to transport household goods outside of the City of Denver within a radius of fifteen miles.

Applicant is a resident of Denver and for a number of years has had a license from the city as a mover of household goods within that jurisdiction. On March 24, 1943, he filed an application with the Public Utilities Commission of Colorado, to which we hereinafter refer as the Commission, "for an exemption from the provisions of the Public Utility Act of the State of Colorado, or in lieu thereof, a special private carrier's permit for the territory adjacent to Denver," based upon the alleged fact "that approximately six per cent of your applicant's regular annual business requires the moving of the property of his customers beyond the present city limits into what is generally termed Metropolitan Denver, all within a radius of fifteen miles beyond the city limits of the City and County of Denver." No specific route was to be fixed because each transaction would require the use of a different route. It was urged that there was a "public need and necessity" therefor and that such extended service would not interfere or impair the service of carriers then operating under permits from the Commission. It was also stated in the application that "in many adjoining states" a permit is not required and an exemption is made under such circumstances. Applicant also states that under the present law and rules and regulations of the Commission "necessary and reasonable provisions for the operation of your applicant as above outlined, do not obtain," and prays for an exemption or special permit.

Hearing on the application was set for May 20, 1943, and notice was sent to twenty-two carriers in the state.

The Colorado Transfer and Warehousemen's Association, Weicker Transfer and Storage Company and others protested the application. Several appeared at the hearing and gave testimony on the issue of the need of the service for which application was made in opposition to the testimony of applicant and his witnesses. The Commission took the matter under advisement and December 4, 1943, entered an order denying the application. In due course applicant filed his petition for review with the district court. The Attorney General appearing for the Commission, filed a motion to dismiss based upon the grounds that the petition did not state "a claim upon which relief can be granted," and that it appears that the Commission has regularly pursued its authority; that it entered its order in accordance with the evidence, and that the order and decision of the Commission did not violate any right of the applicant.

The Warehousemen's Association and the Weicker Transfer Company filed motions to intervene. Applicant did not resist the Weicker motion, but opposed the intervention by the Warehousemen's Association on the grounds that the members thereof should appear individually. The court permitted both of these parties to intervene and answers were duly filed, but when the Attorney General presented his motion on behalf of the Commission to dismiss, the answers of the interveners were withdrawn and they joined in the motion to dismiss. The motion was argued April 14, 1944, and taken under advisement, and April 15 the court sustained the motion and dispensed with the filing of a motion for a new trial.

The points specified for reversal may be stated in two propositions, viz., that (1) The Commission abused its discretion and avoided its clear legal duty in denying the application; and (2) the court erred in permitting the interveners to participate by the method pursued.

■ 1. On the first point, counsel for applicant argues that the Commission had the power and that it was

its duty to issue the permit as requested, relying particularly upon section 304, chapter 16, '35 C.S.A., which reads as follows: "The commission shall have power, under such rules of procedure governing the application therefor as it may prescribe, to issue a certificate of public convenience and necessity to a motor vehicle carrier or to issue it for the partial exercise only of the privilege sought; and may attach to the exercise of the rights granted by said certificate such terms and conditions as, in its judgment, the public convenience and necessity may require." Under this statute the Commission is vested with discretion to grant or refuse an applicant's request, in view of the language, "as in its judgment, the public convenience and necessity may require." Testimony was introduced before the Commission to the effect that there was no need for the service for which applicant was seeking a "permit" (section 304, supra, makes no mention of a permit), and even under his own testimony, we doubt if he made out a prima facie case; because, while he endeavored to establish as a fact that between the time of the filing of his application and the time of the hearing, his calls for outside of Denver service had risen from six to eighteen per cent of his total business, there is no evidence that satisfactory service was not rendered the persons calling, within a reasonable time by duly authorized carriers. On the other hand, testimony of the protestants shows that there were several hundred vans and trucks, in charge of competent men, operated by a number of companies under certificates granted by the Commission, that could easily handle this business and that there were several who furnished a "call and demand" service. There was further testimony to the effect that the calls could be taken care of the same day, or, if not, within a very short time thereafter. Applicant did not produce a single witness to testify that he had met with delay in having his household goods moved. Applicant calls attention to the testimony of the protestants to the

effect that during a five-month period only 122 calls, or an average of about one a day, were for the type of service requested by the applicant and for that reason, the granting of his "permit" would not materially affect the business of protestants. By the same token there is no showing that applicant's proffered service was a public convenience and necessity.

In its written findings the Commission stated, inter alia: "The theory of regulated *monopoly* is based upon the fact that, except as shown, it is better to have fewer utilities who can make a reasonable return upon their investments and thus give the public better and more expeditious service, than to throw the doors open so that, although the number of operators may be increased, service to the public may become disorganized." Counsel for applicant uses this isolated statement as a basis for his argument that the Commission was prejudiced in favor of a "monopoly," and therefore abused its discretion. Such a conclusion is far-fetched, for when the statement is read in connection with the rest of the Commission's order it clearly discloses that no prejudice resulted.

Part of the basis for the application was the war emergency in its relation to the speedy movement of household goods for war workers engaged in defense industries immediately outside of Denver. That feature of the case is covered by an order of the Office of Defense Transportation (O.D.T.), set out in the Commission's order, and requires no consideration by us.

As to the practice in other states, counsel refers to statutes in Missouri and Utah which states seem to have passed laws covering the point here involved relating to the requested exemption; for example, Par. (a), section 13, chapter 65, Laws of Utah, 1935, specifically exempts "Contract motor carriers of property when operating wholly within the limits of an incorporated city or town and for a distance of not exceeding fifteen road miles beyond the corporate limits of the city or town * * *."

The Missouri act—Revised Statutes, Missouri, 1939, vol. 1, pp. 1415, 1416; c. 35, art. 8, is somewhat analogous but not so specific. In any event, these two authorities merely emphasize the fact that there are no such exemptions in the Colorado act. (See, section 346, chapter 16, '35 C.S.A.)

There is a great deal of discussion in the respective briefs concerning the kind' of carrier applicant proposed to be. He describes himself as "a private carrier for hire," and in his reply brief relies upon the last sentence of the first paragraph of section 350, chapter 16, '35 C.S.A. Assuming that applicant brings himself within that definition of a private carrier as described—defined in section 348—in that section it will be noted that the Commission still has discretion as to the issuance of the permit.

Counsel for applicant cites one authority, viz., *Bushnell v. People*, 92 Colo. 174, 19 P. (2d) 197, in which we affirmed the conviction of a private carrier who was operating without a permit. So far as it relates to the case at bar the author of the opinion quotes two federal cases: *Stephenson v. Binford*, 53 F. (2d) 509, and *Louis v. Boynton*, 55 F. (2d) 471, on the proposition that the public utility statutes of Texas and Kansas were constitutional, notwithstanding they exempted private carriers who hauled their own products (Texas) and "carriers who shall operate wholly within any city or village .* * * or within a radius of twenty-five miles * * *." (Kansas) Bushnell case, supra, page 189. The opinion in the Boynton case, supra, does contain the statement that, "there is no valid objection to an exemption of private motor carriers who operate within a radius of twenty-five miles of the corporate limits of a city or village," but the point again is that the exemption is statutory.

From reading the testimony in this matter it is apparent that the Commission followed the case of *McKay v. Public Utilities Commission*, 104 Colo. 402, 413, 91 P.

(2d) 965, wherein we said: "No permit as a private carrier can be granted by the commission if in its opinion, based upon proper evidence, such private-carrier operation impairs the efficient public service of an authorized common carrier serving the same territory or over the same highways or routes." This also is the substantial language of section 350, supra.

Therefore, the conclusion becomes clear that if applicant was relying upon an exemption, the claimed exemption was not in our statutes, and that if he relies on a permit, the Commission had discretion to refuse it, and again we say that there is no abuse of discretion shown.

■ 2. As to participation by the interveners in the district court, that was primarily one of discretion, which we think was properly exercised, but in any event there was no prejudice shown in allowing the intervention.

Finding no reversible error in the record, the judgment is affirmed.

MR. JUSTICE ALTER not participating.