No. 19,160.

THE DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, ET AL. *v.* PUBLIC UTILITIES COMMISSION OF COLORADO, ET AL.

(351 P. [2d] 278)

Decided April 11, 1960.   Rehearing denied May 2, 1960.

Mr. T. A. WHITE, Mr. MARION R. SMYSER, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. ROBERT L. NAGEL, Assistant, for defendant in error Public Utilities Commission of Colorado.

Mr. LESLIE R. KEHL, for defendants in error Farrington doing business as Yampa Transfer, Messrs. JONES & MEIKLEJOHN of counsel.

*In Department.*

Opinion by MR. JUSTICE MOORE.

THIS cause originated before the Public Utilities Commission and is here on writ of error to review a judgment of the District Court upholding an order of the Commission authorizing extension of operations by the Yampa Transfer, holders of a P.U.C. Permit.

The parties will be referred to as follows: The Public Utilities Commission as the Commission; The Denver & Rio Grande Western Railroad Company as Rio Grande;

Gray Truck Line, a co-partnership, as Gray; the Farringtons, a co-partnership, as Yampa; Larson Transportation Company as Larson.

Yampa held a certificate of public convenience and necessity under which it was authorized as a common carrier by motor vehicle to engage in the business of transportation of:

"Freight, including farm products, from ranches within a radius of 25 miles of Yampa, to shipping points in said area, and grain to mill and elevator at Steamboat Springs, with backhaul of farm supplies including feed, coal, lumber and timber; farm equipment and used household goods, from point to point within said area; livestock from point to point within said area and from points in said area in less-than-carload lots, to Denver; breeding stock in less-than-carload lots from and to points in said area to and from all points in the State of Colorado, as required by customers residing in the area; livestock, only, on call and demand in less-than-carload lots, from and to points within a radius of 25 miles of Yampa, Colorado, to and from points in the State of Colorado."

By application filed August 5, 1957, Yampa requested that the Commission order an extension of the above quoted authority to bring about the following enlargement of services offered:

(1) To eliminate from Yampa Transfer's livestock authority the restriction to less-than-carload lots;

(2) To permit transportation of produce from points within 25 mile radius of Yampa to Denver for C. E. Crowner and Otto Gumbrecht, of Toponas, Colorado; and

(3) To permit transportation of general merchandise from Denver to Yampa for G. E. Roach and Vint's Bay Station.

After hearings before an examiner, and a report by him, the Commission entered its decision, by which it granted all the increased authority sought by Yampa

except that pertaining to the transportation of general merchandise from Denver to Yampa for G. E. Roach and Vint's Bay Station.

As already noted, the district court, in appropriate proceedings, sustained the order of the Commission.

Rio Grande, Larson and Gray, all of whom are common carriers operating in the area under authority granted by the Commission, seek reversal of the judgment. In essence the argument made in support of their respective positions is that there is no competent evidence in the record before us to justify the finding of the Commission that public convenience and necessity required that Yampa be authorized to transport livestock in carload lots; and that no competent evidence supports the granting of authority to Yampa to transport produce within a 25 mile radius of Yampa to Denver for Crowner and Gumbrecht.

The order made by the Commission, in legal effect, amounts to the granting of a certificate of public convenience and necessity with relation to the enlarged service thereafter to be offered by Yampa. *Colorado et al. v. James F. Donahue et al.*, 138 Colo. 492, 335 P. (2d) 285.

The validity of such an order is to be tested by the same rules governing the issuance of a new certificate to a new carrier.

### QUESTIONS TO BE DETERMINED.

*First: Was there any competent evidence before the Commission to support the conclusion that existing common carrier service was inadequate to haul produce from points within 25 miles of Yampa, to Denver, as might be needed by Mr. Crowner and Mr. Gumbrecht?*

The question is answered in the negative. On behalf of Yampa the partners testified that they desired to haul produce, within the specified 25 mile radius, solely for Crowner and Gumbrecht; that by produce they meant lettuce and spinach, and any other farm or truck garden products that could be grown in that altitude. They

stated that they were not aware of any other *local carriers* who could handle this business; that they had requests from the named shippers to furnish such service, and that during the previous year no such produce was shipped.

Otto Gumbrecht testified that he had never attempted to transport produce by any other carrier. He admitted that Larson had solicited his business. He did not know where he would have to contact Larson, and that it had been several years since he shipped lettuce by rail; and he did not know whether he would ship anything next year or not.

Witnesses for Larson and Rio Grande established clearly that they were adequately equipped to handle the business; that Larson provides daily service Monday through Friday between Denver, Steamboat Springs, and Craig; that Gumbrecht was contacted by Larson and was told that there was no use talking about the hauling for the reason that Gumbrecht was not going to be in the produce business any longer; that Larson can provide all pick-up service of lettuce and produce in the field that any shipper in the area wants, and can give six or seven hour service between Yampa and Denver. Larson trucks travel through Toponas every day and can adequately serve the area.

The evidence, considered in the light most favorable to Yampa, falls far short of that required to show that the public convenience and necessity would be served by enlarging the authority of Yampa. No finding of public convenience and necessity for common carrier services is justified in the complete absence of some showing that there is inadequacy of service offered by common carriers already serving the area. In *McKay v. Public Utilities Commission,* 104 Colo. 413, 91 P. (2d) 965, this court said:

"No permit as a private carrier can be granted by the commission if in its opinion, based upon proper

evidence, such private carrier operation impairs the efficient public service of an authorized common carrier serving the same territory or over the same highways or routes."

As a corollary to that statement it follows that there must be some showing by "proper evidence" of inadequacy of existing common carrier service before the new authority sought by Yampa could be granted.

The whole theory upon which the structure of Public Utility Commission powers is based is that of a regulated monopoly. In *Archibald v. Commission,* 115 Colo. 190, 171 P. (2d) 421, it was said that:

"The theory of regulated monopoly is based upon the fact that, except as shown, it is better to have fewer utilities who can make a reasonable return upon their investments and thus give the public better and more expeditious service, than to throw the doors open so that, although the number of operators may be increased, service to the public may become disorganized."

*Second: Was there any competent evidence before the commission to support the conclusion that existing common carrier service was inadequate to supply the needs of the area for transportation of livestock in carload lots?*

██ The question is answered in the negative. We have read the testimony of all witnesses who appeared in connection with the matter of transportation of livestock. The witnesses who were prospective livestock shippers of Yampa gave no evidence of any inadequacy of existing service. The most that can be said of the testimony is that if Yampa should receive authority to transport livestock in carload lots the witnesses would use the service. No showing was made that the Gray Line or other carriers already in the area had ever been called upon, or that the service offered by them was inadequate for the needs of the area.

The facts of this case, and the testimony of the witnesses produced by the Applicant are so much like the

situation in *Canada v. Transit, Inc., et al.,* 154 Neb. 256, 47 N.W. (2d) 507, that we quote therefrom at length:

"A provision of the statute is that as a condition precedent to the issuance of a certificate, the commission shall find that the service to be authorized is or will be required by present or future public convenience and necessity. The question of the adequacy of service of existing carriers is implicit in the issue of whether or not convenience and necessity demand the service of an additional carrier in the field. Obviously the existence of an adequate and satisfactory service by motor carriers already in the area is complete negation of a public need and demand for added service by another carrier.

\* \* \*

"The commission made a finding that present and future public convenience and necessity required the proposed operation to the extent authorized. This finding is destitute of evidential integrity. A representative of an oil company was a witness. He had nothing to do with shipments of the company to its bulk plants, and no duty or authority to procure transportation service otherwise. He did not know whether or not there existed in the territory adequate motor carrier service. His testimony had some tendency and value to establish that appellants and other motor carriers were performing adequate and satisfactory service in the territory. An employee of another oil company stated that his company suspended petroleum business during the war and was resuming it, and that it had no bulk petroleum shipments in Nebraska and no present transportation requirements or interest therein. Three jobbers, located at Beaver City, Lebanon, and Axtell respectively, gave no evidence supporting a claim of demand or necessity for additional motor carrier transportation, but did claim the right to select the person they wanted as their transporter and said they preferred to use the service of appellee because he is a 'home town' operator and they liked to keep at home the money they spend. The sales

representative of a third oil company was a witness, but he knew of no instance of appellee presently hauling for his company or its distributors. He admitted that numerous other existing carriers were providing satisfactory service in transporting shipments of bulk petroleum products from the pipeline of the company at Superior."

The above quoted language correctly states the rule of this jurisdiction under which a common carrier serving a particular area is entitled to protection against competition so long as the offered service is adequate to satisfy the need.

For the reasons above set forth the judgment is reversed and the cause remanded with directions to order the dismissal of the application of Yampa.

MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE concur.