No. 21275.

COLORADO TRANSPORTATION COMPANY *v.* THE PUBLIC
UTILITIES COMMISSION OF THE STATE OF
COLORADO AND CHECKER CAB COMPANY.
(405 P.2d 682)

Decided September 13, 1965

HOLLAND & HART, DAVID BUTLER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT N. TRUNK, Assistant, for defendant in error The Public Utilities Commission of the State of Colorado.

JOHN F. MUELLER, for defendant in error Checker Cab Company.

*En Banc.*

138

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

THIS writ of error represents another chapter in the continuing struggle between the Colorado Transportation Company, hereinafter called Transportation, and the Checker Cab Company doing business as Checker Sightseeing, hereinafter called Checker, concerning Checker's efforts to obtain authority from the Public Utilities Commission, hereinafter called the Commission, to use and operate multi-passenger buses in the conduct of its sightseeing business.

Transportation is a common carrier holding Certificate of Public Convenience and Necessity No. 55, which certificate authorizes it to carry passengers and their baggage in sightseeing service by bus or limousine, both within Denver and from Denver to various sightseeing points in the surrounding mountain area, and return.

Like Transportation, Checker has also been in the sightseeing business for nearly forty years, and it holds Certificate of Public Convenience and Necessity No. 78. Historically, this certificate, however, has limited Checker in its sightseeing business to the use of automobiles or limousines only, *i.e.*, in its grant of authority Checker was prohibited from using buses in any and all of its various sightseeing operations.

Notwithstanding this lack of authority to use buses in the conduct of its sightseeing service, in 1955 Checker began to use buses. Shortly thereafter complaint was made concerning Checker's use of buses in its sightseeing service, and after hearing it was ordered by the Commission to cease and desist from this practice.

In 1956 Checker then made application to the Commission for an extension of its certificate for authority to render sightseeing service to and from all points *within* the City and County of Denver and also to permit it to use multipassenger buses, as well as limousines, in all of its sightseeing operation, *i.e.*, both within Den-

ver and from Denver to the surrounding mountain areas and return. After hearing, this application of Checker was granted by the Commission over the objection of Transportation. Thereafter, Transportation sought judicial review of this action of the Commission, all of which culminated in the determination by this court that the Commission had acted erroneously, and that instead of granting Checker's application the Commission under the circumstances should have denied the same. See *Colorado Transportation Company v. P.U.C. and Checker Cab Company,* 141 Colo. 203, 347 P.2d 505.

In that case this court noted Checker "made no effort to prove public convenience or necessity" in the hearing before the Commission, but that on the contrary Checker's position — both before the Commission and in this court — was that the action of the Commission was proper because it was "only modernizing its equipment and furthering its purpose of transporting sightseeing passengers in conformity with the demands of the public." This contention that Checker had a "right" to modernize its equipment was rejected by this court on the basis of *P.U.C. v. Donahue,* 138 Colo. 492, 335 P.2d 285, all without prejudice to the right of Checker to apply for and obtain "such certificate to operate in Denver, as the facts and law may warrant."

Checker thereafter in 1960 did file a supplemental application with the Commission, asking that it be granted authority to render sightseeing service within the City and County of Denver and furthermore that in connection with all of its sightseeing authority, as thus extended to include Denver, it also be permitted to use multipassenger buses as well as automobiles or limousines. After hearing the Commission in 1962 granted Checker's application in its entirety, though limiting it to the use of three buses, each to be of a capacity which would not exceed thirty-seven passengers.

Thereafter Transportation again sought judicial review of this action of the Commission. Upon hearing

the trial court affirmed the several findings and order of the Commission and entered formal judgment to that effect. By the present writ of error Transportation now seeks reversal of that judgment.

As already noted, Checker in its application sought the authority to render sightseeing service *within* the City and County of Denver. Such request was made necessary by the adoption in 1955 of Amendment XXV to the Colorado Constitution, which amendment divested home rule cities of the power to regulate the service and rates of a public utility such as Checker and placed the power to so regulate in the Commission. This particular request of Checker that it be granted authority to render sightseeing service to and from all points in Denver was granted by the Commission, it not being too clear as to whether such action was based on public convenience and necessity or on the premise that Checker was entitled thereto under the so-called "grandfather rights" theory. In this connection, it should be noted, there was no dispute but that Checker had in fact been rendering sightseeing service, as such, *within* the boundaries of the City and County of Denver for many years prior to 1955. In any event, as we understand the matter, Transportation takes no exception to this action of the Commission, so long as Checker is not permitted to use multipassenger buses in any of its operation, be it within or without Denver. There being no objection, then, to that part of the order which authorized Checker to transport passengers for sightseeing purposes to and from all points and places *within* the City and County of Denver, the judgment of the trial court insofar as it affirms this particular portion of the Commission's order will not be disturbed.

The overriding issue posed by this writ of error, however, is the correctness of the Commission's order that Checker be granted the right to use three multipassenger buses in connection with its sightseeing service, both within and without Denver. In this regard the

Commission found that public convenience and necessity required such an order.

 Transportation attacks this part of the Commission's order on several grounds, contending initially that there was no showing that public convenience and necessity required any such order. As a corollary of the foregoing, Transportation goes on to point out that "the Commission did not find that the service of Transportation was inadequate in any respect, and if there had been such a finding it would not have been supported by substantial evidence in the record." With this general contention of Transportation we are in complete accord. Hence, the judgment of the trial court insofar as it affirms that portion of the order of the Commission which authorizes Checker to use buses in its sightseeing service, as such had then been extended to include sightseeing service within the City and County of Denver, must be reversed.

It would seem to us that probably the real reason for the Commission's falling into error in the instant case is the fact that even at this comparatively late date it professes to be uncertain as to whether utility regulation of motor carriers in Colorado is based upon the theory of "regulated competition" or "regulated monopoly." As illustrative thereof, during the course of the hearing, one Commissioner opined as follows:

"We have a peculiar situation here and I hardly know how to rule. Our federal concept, as I understand it, has been on the theory of regulated competition. If you can tell me what the Colorado concept is — I don't know. We have got rulings that indicate both ways."

And then in its formal findings and order, the Commission stated as follows:

"The Colorado [Public Utilities] Commission, for the past twenty years, has regulated motor carriers for hire under the belief that the theory of regulated competition was in compliance with our law. We will not attempt to resolve this question as it would appear it is a matter of

law which we feel is beyond our jurisdiction and should be left to the courts. . . ."

 It is too late to debate the merits of the competing principles of "regulated competition" and of "regulated monopoly" in the field of utility regulation. Despite the claimed uncertainty of the Commission, the State of Colorado has long been wedded to the concept of regulated monopoly in the field of public utility regulation. For the benefit of the Commission, a few of the many cases which say so, are: *Ephraim Freightways, Inc. v. P.U.C.,* 151 Colo. 596, 380 P.2d 228; *Donahue v. P.U.C.,* 145 Colo. 499, 359 P.2d 1024; *Denver & Rio Grande Western Railroad Co. v. P.U.C.,* 142 Colo. 400, 351 P.2d 278; and *Archibald v. P.U.C.,* 115 Colo. 190, 171 P.2d 421. For better or for worse, then, Colorado is quite definitely committed to the principle that public utility regulation is based upon the theory of a "regulated monopoly."

The foregoing is perhaps worthy of more than just passing notice when applied to the instant case, inasmuch as Transportation admittedly has an absolute "monopoly" in the sightseeing by bus business in and around the Denver area, as it is the *only* company in the Denver area possessing the authority to run multipassenger buses in its sightseeing operations. But the fact that Transportation has a monopoly on the sightseeing by bus business in nowise assists Checker in its efforts to also be permitted to use multipassenger buses in the conduct of it sightseeing service.

 As mentioned above, in *Colorado Transportation Company v. P.U.C. and Checker Cab Company, supra,* this court held that before Checker was entitled to a grant of extended and new authority from the Commission to the end that it could thereafter use buses in its sightseeing service, it had to demonstrate that public convenience and necessity required the granting of such additional authority, and that it was not entitled to such on any theory that it was simply "modernizing its equipment." And in order for Checker to demonstrate that

public convenience and necessity required the granting by the Commission of its application to be permitted to use buses in all of its sightseeing service, Checker must show, among other things, the inadequacy of the existing service. In other words, Checker must show that Transportation is and has been unable to adequately meet the general public's need and demand for sightseeing service by bus. This Checker has completely failed to do. In this regard about all that Checker showed was that on occasion Transportation declined to make stops at certain motels located on West and East Colfax in Denver, and insisted that the would-be customers come to its depot centrally located in downtown Denver. This action on the part of Transportation was based on what it believed to be the economic unfeasibility of driving a bus all around the city to pick up customers. But for these very minor complaints, all the evidence tended to establish that Transportation was very adequately meeting the public need for sightseeing by bus in and around Denver. Such being the case, Checker's request that it be granted the right to compete with Transportation in the sightseeing by bus market should have been denied.

In *Ephraim Freightways, Inc., v. P.U.C., supra,* after noting that "the policy of the State of Colorado and the whole theory upon which the structure of Public Utility Commission power is based is that of regulated monopoly," this court went on to state that "no finding of public convenience and necessity for common carrier service is justified unless present service offered in the area is inadequate" and furthermore that "the existence of an adequate and satisfactory service by motor carriers already in the area is a negation of public need and demand for added service by another carrier." In that same case this court defined "inadequate service" as follows:

"Of course, not all instances of inadequate service testified to by applicant's witnesses were shown to be without foundation and certain complaints in the record remain unanswered. But the test of inadequacy is not per-

fection, and when a common carrier renders services to numerous customers in a wide territory undoubtedly some dissatisfaction will arise and some legitimate complaints result; but for a new service to be authorized in the area already served by a common carrier, inadequacy of the present service must be shown to be substantial . . . . Applicant's unrebutted evidence of some instances of unsatisfactory service does not constitute substantial evidence of inadequacy."

Application to the instant case of the foregoing definition of "inadequate service" clearly reveals that Checker has totally failed to show that Transportation's sightseeing by bus service is inadequate to meet the general public's need therefor. Rather, Checker's evidence in the main tended to show that in order to remain in a highly competitive business *it* needed the right to use buses because of the fact that through the years the sightseeing public has tended to switch its preference from sightseeing by automobile or limousine to sightseeing by modern glass top buses. But the fact that *Checker* needs this authority to use buses does by no means prove that the *public* convenience and necessity require that such authority be granted it. According to the record before us, that portion of the sightseeing public which perfers to go by bus, rather than by limousine, can have their needs adequately met by Transportation.

■ One final word as to Checker's claim that it is entitled to use buses in its sightseeing service *within* the city limits of Denver because it operated buses prior to 1955 in Denver and that under the so-called "grandfather rights" theory it is now entitled to a grant of authority to use buses in its sightseeing services in Denver. Assuming arguendo that the concept of "grandfather rights" has applicability in the field of public utility regulation, for the purposes of the instant case it is sufficient to note that the record fails to disclose that Checker in fact used buses prior to 1955 in any of its sightseeing business, be it within or outside of Denver. Prior to 1955 Checker

owned no buses — only limousines — nor does the record disclose that except on perhaps very rare and isolated occasions did it ever use and operate any leased buses. Rather, the general practice appeared to be that when persons came to Checker desiring bus service, as opposed to limousine service, Checker referred such persons to Transportation, Transportation then paying Checker a 20% commission fee therefor.

Having failed to show that the existing service is inadequate, it follows that Checker has theretofore been unable to establish that public convenience and necessity required the Commission to grant it authority to use buses in its sightseeing services. The judgment of the trial court insofar as it affirms the order of the Commission that in its sightseeing service Checker be allowed to use three buses, each to be of a capacity of not to exceed thirty-seven passengers, is therefore reversed and the cause is remanded with direction that the trial court vacate its judgment in this regard and thereafter direct the Commission to vacate and set aside that part of its order.

The judgment of the trial court insofar as it affirms that portion of the order of the Commission granting Checker authority to render sightseeing service to and from all points and places *within* the City and County of Denver (but without any right to use buses in connection therewith) is affirmed.

MR. JUSTICE SCHAUER dissents.