**MOBILE PRE–MIX TRANSIT, INC., and North Denver Transfer & Storage Company, Petitioners–Appellants,**

v.

**The PUBLIC UTILITIES COMMISSION of the State of Colorado, Don Ward, Inc., Atwood Truck Line, Inc. and Rio Grande Motor Way, Inc., Respondents–Appellees.**

No. 28505.

Supreme Court of Colorado.

Oct. 27, 1980.

As Modified On Denial of Rehearing
Nov. 17, 1980.

Joseph F. Nigro, Dayton Denious, Denver, for petitioners–appellants.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Eugene C. Cavaliere, Asst. Atty. Gen., Denver, for respondent–appellee The Public Utilities Commission of the State of Colo.

Jones, Meiklejohn, Kehl & Lyons, Leslie R. Kehl, Denver, for respondent–appellee Atwood Truck Lines, Inc.

John S. Walker, Denver, for respondent–appellee Rio Grande Motor Way, Inc.

Grant, McHendrie, Haines & Crouse, P. C., J. Albert Sebald, Denver, for Don Ward, Inc.

HODGES, Chief Justice.

This is an appeal from a judgment of the district court affirming a decision of the Public Utilities Commission (PUC) denying the transfer of a contract carrier's permit. We affirm.

North Denver Transfer & Storage, doing business as Weicker Transport Company (Weicker), is the holder of PUC Permit No. B–802 which authorizes the carrying of general commodities as a contract carrier. Mobile Pre–Mix Transfer, Inc., (Mobile) filed a transfer application with the PUC for authority to acquire Permit No. B–802 by the purchase of all of the capital stock of Weicker.

Mobile is a wholly–owned subsidiary of MPM, Inc., a holding company. MPM also owns Mobile Pre–Mix Concrete, Inc., (Mobile Concrete) which is the largest operator of ready–mix concrete plants in Colorado. Mobile presently holds a PUC permit for contract carriage of aggregate and cement for Mobile Concrete only.

The application for transfer of Weicker's permit to Mobile was opposed before the PUC by Don Ward, Inc., Atwood Truck Lines, Inc., and Rio Grande Motor Way, Inc., who are common carriers of cement. A hearing was conducted before a PUC hearing examiner. The PUC adopted the examiner's findings and denied Mobile's application for transfer of Permit No. B–802. On review in the district court, Mobile sought reversal of the PUC decision. The district court affirmed the PUC decision.

On appeal, Mobile contends that the record before the PUC does not establish that it would be contrary to the public interest to grant its application for transfer of the contract carrier's permit, and therefore the PUC erroneously denied its application to transfer Permit No. B–802.

## I.

■ The application involved in this case is for the transfer of a contract carrier's permit. The applicable statutes concerning contract carriers are contained in Article 11 of Title 40 of the Revised Statutes. Section 40–11–101 et seq., C.R.S.1973.

The policy underlying the regulation of contract carriers is set forth in section 40–11–103(1), C.R.S.1973:

"It is declared that the business of contract carriers by motor vehicle is affected with a public interest and that the safety and welfare of the public traveling upon such highways, the preservation and maintenance of such highways, *and the proper regulation of motor vehicle common carriers using such highways require the regulation of contract carriers by motor vehicle* to the extent provided in this article. . . ." (Emphasis added.)

In *PUC v. Stanton Transportation Co.*, 153 Colo. 372, 386 P.2d 590 (1963), this court reviewed at length the statutes governing regulation of contract carriers. From that review, we concluded that, "[t]he flavor of the entire act is to protect common carrier operations. . . . 'The legislative intent is clear, *that the authorization of private carriers shall not be detrimental*, within the limits of the law, to common carrier operation.' " (Original emphasis.)

In his findings of fact, the examiner stated:

"[D]iscrimination and unfair competition . . . are inherent in the relationship which would be created by the transfer of Permit No. B–802 to the Transferee herein [Mobile]. The relationship between the Transferee's affiliate company with two major cement manufacturers . . . creates not only a possibility, but a good probability, that the Transferee would conduct most if not all of the transportation services on behalf of these two large cement manufacturers."

Section 40–11–105(2), C.R.S.1973, specifically forbids the destruction or impairment of service of any common carrier by discrimination or unfair competition practiced by a contract carrier.

"Every contract carrier is forbidden, by discrimination or unfair competition, to destroy or impair the service or business of any motor vehicle common carrier or the integrity of the state's regulation of any such service or business; and to that end, the commission is vested with power and it is its duty to prescribe minimum rates, fares, and charges to be collected by contract carriers when competing with duly authorized motor vehicle common carriers, which rates, fares, and charges shall not be less than the rates prescribed for motor vehicle common carriers for substantially the same or similar service."

This provision does not specifically authorize the denial of an application for transfer of a permit. However, section 40–11–103(2), C.R.S.1973 provides:

"No permit nor any extension or enlargement of an existing permit shall be granted by the commission if in its judgment the proposed operation of any such contract carrier will impair the efficient public service of any authorized motor vehicle common carrier then adequately serving the same territory. . . ."

The language of this section, "[n]o permit . . . shall be granted," extends not only to the granting of new contract carrier permits, but also to the granting of transfers of existing permits which would be enlarged to "impair" existing common carriers.

Thus, when sections 40–11–103 and 105, C.R.S.1973, are read together, and in light of the general public policy of the law to protect common carriers, *see PUC v. Stanton Transportation Co., supra,* it is apparent that denial of an application for transfer of a permit is within the PUC's regulatory authority and in this case the denial was properly affirmed by the district court's judgment.

## II.

Mobile complains that the PUC based its denial on mere speculation that Mobile might practice discrimination and unfair competition. Also, Mobile points to our de-

cision in *Thacker Bros. Transportation v. PUC*, 189 Colo. 301, 303, 543 P.2d 719 (1975), for the proposition that for a certificate to be denied there must be a finding "not only of unlawfulness, but . . . of 'violations of law . . . [reaching] the height of intentional violation, reckless disregard for the law or persistent, protracted, intentional and knowing violation.' " Since the record before the PUC does not establish this, Mobile insists that the PUC decision cannot therefore be sustained.

The standard set forth in *Thacker Bros.* has no bearing on the situation presently under review. In *Thacker Bros.*, we were concerned with the period of transition following the adoption of Senate Bill No. 208 (codified in section 40–10–105(2), C.R.S. 1973) when the policy of this state with regard to common carriers shifted from one of regulated monopoly to that of regulated competition. Thacker Bros. was a contract carrier who, under pre–Senate Bill No. 208 policy, could not obtain a certificate as a common carrier but was, after the adoption of the statute, entitled to such a certificate. However, during the period preceding the shift in state policy, *Thacker Bros.* had purportedly engaged in unlawful conduct as a contract carrier so as to operate in effect as a de facto common carrier without a certificate of public convenience and necessity. What we held in *Thacker Bros.* was simply that a carrier should not be denied a certificate merely for its prior unlawful conduct unless that unlawful conduct reached the level of intentional or reckless violations of the PUC's rules and regulations.

The present case raises an altogether different question. Here, we are confronted with the problem of common ownership between a contract carrier who seeks authority to transport a commodity of an industry in which an affiliated company has substantial influence and involvement. We are asked to determine under what circumstances the PUC may deny the transfer of a permit on the theory that to grant the transfer would result in discrimination or unfair competition to existing common carriers.

■ Where the PUC discovers actual intent on the part of a transferee to use its advantageous position in an industry to engage in discrimination or unfair competition if the transfer is granted, denial of the application is clearly appropriate. However, it is not necessary that the PUC find actual intent before it may deny a transfer in these circumstances. The PUC may properly deny a transfer wherever there is a substantial opportunity for a transferee, because of its advantageous position in the industry, to discriminate or compete unfairly. In similar cases, the Interstate Commerce Commission has denied applications where it has found that an applicant would have a substantial opportunity to discriminate or compete unfairly. *See Alter Trucking and Terminal Corp.*, 107 M.C.C. 644 (1967) aff'd 299 F.Supp. 819 (S.D.Iowa 1969).

If the record of the PUC hearing contains sufficient evidence to find that Mobile, because of its affiliation with Mobile Concrete, has a substantial opportunity to discriminate or compete unfairly, then we must sustain the ruling of the PUC denying the application to transfer Permit No. B–802.

III.

■ We next consider the sufficiency of the evidence to support the commission's denial of Mobile's application. We begin by noting that the scope of our review is extremely limited. The extent to which a court may examine a final decision of the PUC is provided by section 40–6–115(2) and (3), C.R.S.1973. Where there is adequate evidence in the record to support the decision of the PUC, a reviewing court will not disturb findings or substitute its judgment for that of the PUC, and this is so even though the court, had it been the trier of fact, would have reached the opposite result. *Mountain States Telephone and Telegraph Co. v. PUC*, 180 Colo. 74, 502 P.2d 945 (1972).

■ We reiterate that the determination of whether a substantial opportunity for

discrimination or unfair competition exists is a matter within the peculiar expertise of the PUC. Their determination should not be disturbed unless it is unsupported by competent evidence or is arbitrary and capricious. *Miller Bros., Inc. v. PUC*, 185 Colo. 414, 525 P.2d 443 (1974).

A review of the record of the hearing before the PUC examiner reveals that there is sufficient evidence to support the PUC's denial of Mobile's application. The record shows:

(1) that Mobile and Mobile Concrete are both controlled by MPM, Inc.;

(2) that Mobile Concrete is the largest producer of ready–mix concrete in Colorado;

(3) that Martin Marietta Company and Ideal Cement Company are the two major consignors of bulk cement in Colorado;

(4) that Mobile Concrete is the largest purchaser of bulk cement in Colorado from Martin Marietta and the largest or second largest purchaser of bulk cement in Colorado from Ideal Cement;

(5) that in some sales arrangements Martin Marietta and Ideal Cement, as consignors, select which carrier will transport the bulk cement from the seller's facility to the place of delivery; and

(6) that Mobile intends to aggressively enter the cement transportation market as a contract carrier.

From these facts, it was entirely reasonable for the PUC to conclude that a substantial probability for discrimination and unfair competition existed because of Mobile's affiliation with Mobile Concrete, the pre–eminent company in the ready–mix cement industry.

Finally, Mobile complains in its brief that the PUC examiner erred by taking official notice of a fact determined in a previous hearing before the commission. The examiner took notice of the finding in PUC Decision No. 83480 that Ideal Cement and Martin Marietta, together, supply 98% of the bulk cement in the state of Colorado. For the purposes of this decision, we are willing to accept, without deciding, that it was error for the examiner to adopt that particular finding of the previous decision. However, even if it was error, it was harmless. In this regard, we adopt the rule of the United States Supreme Court announced in *United States v. Pierce Auto Freight Lines*, 327 U.S. 515, 530, 66 S.Ct. 687, 695, 90 L.Ed. 821, 832 (1946):

"It is true that ordinarily an administrative agency will act appropriately, in a proceeding of this sort, upon the record presented and such matters as properly may receive its attention through 'official notice.' It is also true that this Court, in appropriate instances, has limited the use of the latter implement in order to assure that the parties will not be deprived of a fair hearing.... [But] the mere fact that the determining body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result." [Citations omitted.]

We find no substantial prejudice resulting from the examiner's use of official notice. The decision of the PUC in this case was based upon evidence of the substantial probability of unfair competition or discrimination causing injury to common carriers. Such unfair competition or discrimination is objectionable and thus, a sufficient basis for denying Mobile's application.

The judgment of the district court upholding the decision of the PUC is affirmed.

ROVIRA, J., dissents.

LOHR, J., does not participate.

ROVIRA, Justice, dissenting:

I respectfully dissent. In my opinion the Public Utilities Commission (Commission) has not been given the authority by the state legislature to absolutely deny an application for transfer of a contract carrier permit because the transferee will have the "possibility" or "substantial opportunity" to engage in discrimination or unfair competition.

From 1931[1] to date, competition between contract carriers and common carriers has been regulated under the standards established by the General Assembly, now codified in part in sections 40–11–103 and 40–11–105, C.R.S.1973.

These standards have been recognized by this court in *P. U. C. v. Stanton Transportation Co.,* 153 Colo. 372, 386 P.2d 590 (1963) (proceeding to transfer a contract carrier permit); *Ward Transport, Inc. v. P. U. C.,* 151 Colo. 76, 376 P.2d 166 (1962) (extension of a contract carrier permit); *Archibald v. Commission,* 115 Colo. 190, 171 P.2d 421 (1946) (proceeding to extend service or for exemption from acquiring a contract carrier permit).

The general policy of the law regulating contract carriers *vis–a–vis* common carriers is to prevent destruction or impairment of the service or business of common carriers by discrimination or unfair competition not to protect common carriers from all competition. The authority granted to the Commission to implement that policy is not unlimited. As clearly set out in section 40–11–105(2), C.R.S.1973, the Commission's powers are limited to prescribing minimum rates, fares, and charges for the contract carrier which are not less than those prescribed for common carriers. Further, as we stated in *P. U. C. v. Stanton Transportation Co., supra,* it may attach to the transfer of the permit such terms and conditions as are *reasonable.*

"Possibility," or "good probability" or "substantial opportunity" for unfair competition are not in my opinion sufficient to justify denial of a permit transfer. However, even assuming that such standards are appropriate, the remedy available to the Commission is to prescribe rates, fares, and charges to prevent price competition and establish, if necessary, reasonable conditions to the transfer of the permit as may be required under the circumstances.

The denial of the transfer application based on speculation or conjecture that the competition provided by Mobile might possibly impair the business of the common carriers is without statutory support.

I would reverse the judgment of the district court upholding the decision of the Commission.

---

1. Colo.Sess.Laws 1931, ch. 120 at 465–80.