## No. 14,278.

PUBLIC UTILITIES COMMISSION ET AL. *v.* WEICKER TRANSPORTATION COMPANY ET AL.

(78 P. [2d] 633)

Decided March 21, 1938. On petition for rehearing opinion modified and rehearing denied April 18, 1938.

Mr. BYRON G. ROGERS, Attorney General, Mr. JAMES J. PATTERSON, Assistant, Mr. WORTH ALLEN, for plaintiffs in error.

Mr. RICHARD E. CONOUR, ELIZABETH A. CONOUR, for defendants in error.

Mr. MARION F. JONES, amicus curiae.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

ACTION in certiorari involving authority of the Public Utilities Commission, on its own motion to enlarge or clarify a permit to transport freight for hire issued to a private carrier, so as to include intermediate points on his route, when such intermediate points were not mentioned in his application or in his permit. The trial court held that the commission, in assuming to exercise such authority, abused its discretion, and exceeded its jurisdiction. The commission and the carrier Goldstein, as plaintiffs in error, seek reversal of that judgment. Defendant in error Weicker Transportation Company, a corporation, is a competing carrier, and the attorney for the Colorado Trucking Association appears as a friend of the court.

On March 3, 1933, Goldstein applied to the commission for an A permit, asking the right to transport freight by truck in both interstate and intrastate commerce, the pertinent parts of the application reading as follows: "The proposed operation is to be over substantially regular or established routes, or between substantially fixed termini, or to a fixed terminus or termini. Between Denver and Colorado-Wyoming line via U. S. Highway 285 and 85. Between Denver and Pueblo via U. S. Highway 85, both intra-state and interstate."

In response to this application, the commission on March 7, 1933, issued Permit No. A-430 to Goldstein, which reads in part as follows: "In compliance with the provisions of H. B. 173 and with due consideration of the matter set forth in Application A-430, the Commission does hereby grant authority to Bennie Goldstein, whose address is 2243 Lafayette Street, Denver, Colorado, to operate from February 20, 1933, as a private carrier by motor vehicle as it is defined in Section 1, H. B. 173; and to use the equipment set forth in said application. The permittee shall legibly mark each vehicle used in said operation as follows '1933, Colo. Permit A-430'."

At the time private carriers were divided into two classes by section 1, chapter 120, Session Laws, 1931, '35 C. S. A., chapter 16, section 348, as follows:

"1. Class A private carriers shall embrace all private carriers by motor vehicle operating over substantially regular or established routes or between substantially fixed termini; or to a fixed terminus or termini;

"2. Class B private carriers shall embrace all private carriers by motor vehicle who do not operate over substantially regular or established routes or between substantially fixed termini."

Prior to March 1, 1933, Goldstein had been operating under a class B permit, but had been advised by the chief inspector of the commission that he could carry on his same operations under a class A permit, which would cost him less money, and that was his reason for changing. It is not disputed that he had been serving a number of intermediate points under his class B permit, and that the commission knew of that fact.

In 1935, the General Assembly amended the Motor Carrier Act, in part, so as to provide that no private permit should be issued, extended or enlarged, "if the commission shall be of the opinion that the proposed operation of any such private carrier will impair the efficient public service of any authorized motor vehicle common carrier or carriers then adequately serving the same territory over the same general highway route or routes." S. L. '35, c. 166, §2 (approved April 3, 1935), '35 C. S. A., c. 16, §350.

Subsequently, the commission, presumably in pursuance of the above amended statute, on January 15, 1937, sent out a mimeographed letter entitled "Notice to All 'For Hire' Carriers," requiring all motor carriers "holding either certificates of public convenience and necessity or private permits" who were serving intermediate points, but whose certificates or permits "do not mention intermediate points," and who are performing service which is not in terms authorized by their respective permits or certificates, to file formal application with the commission on or before February 15, 1937, for clarification of their respective authorities and approval of such

service or operation." (While this letter was not in the record, it was referred to in the briefs and oral argument.)

In response to the above, Goldstein alleged in his application of February 3, 1937, as follows: "That at the time applicant filed said application [for his permit] he desired and intended to procure, and the commission intended to grant, a permit which would authorize the transportation in intrastate and interstate commerce of freight from and to all points between Pueblo and the Colorado-Wyoming State line which were on the routes named." On March 8, 1937, a hearing was had on this application, at which the defendants in error and several other interested parties were present. At this hearing Goldstein related in detail what his operations had been since receiving his class B permit, and also since receiving his class A permit, showing that he had almost from the beginning served a number of intermediate points between Denver and the Colorado-Wyoming state line, and intermediate points between Denver and Pueblo; that he had, over a long period of time, submitted reports to the commission showing exactly what his operations were, and paying all taxes required by his operations.

At the conclusion of its hearing, the commission entered the following order: "It is therefore ordered, That the authority granted to Bennie Goldstein, holder of Permit No. A-430, should be, and the same is hereby, declared to include not only transportation of freight between Denver and the Colorado-Wyoming state line on U. S. Highways Nos. 285 and 85, but also to and from all intermediate points; and his permit also includes transportation of freight between Denver and Pueblo via U. S. Highway No. 85 and all intermediate points and this order shall accordingly be made a part of Permit No. A-430."

Defendant in error, Weicker Transportation Company, filed its application for rehearing, contending that the order of the commission was illegal and void because it

216

enlarged the permit and granted additional rights to Goldstein, contrary to the provisions of chapter 120, Session Laws 1931, and certain orders of the commission.

The commission's position is that it did not enlarge the authority given to Goldstein or give him any additional rights, other than those he already enjoyed under Permit No. A-430, but only clarified them.

The question before us for decision is, Did the commission, by its order of March 8, 1937, grant additional authority to, and enlarge the rights of, Goldstein over and above the authority given him by his permit No. A-430, without requiring him to make application for extension or enlargement, and to assume the burden of proof as required by section 3, chapter 120, Session Laws 1931, and thus exceed its jurisdiction?

The commission's jurisdiction in this behalf is conferred by section 49, chapter 127, Session Laws 1913, '35 C. S. A., c. 137, §49, which reads as follows: "The commission may at any time upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any order or decision made by it. Any order rescinding, altering or amending a prior order or decision shall, when served upon the public utility affected, have the same effect as is herein provided for original orders and decisions." We are of the opinion that this, as modified by the act of 1935, supra ('35 C. S. A., c. 16, §350), was sufficient authority for the commission to send out its notice of date January 15, 1937, above mentioned, and that Goldstein was legally entitled to file his response thereto of date February 3, 1937, and his actions under the circumstances in this case was a sufficient compliance with section 2, chapter 166, Session Laws 1935, supra ('35 C. S. A., c. 16, §350), part of which reads as follows: "The commission * * * may attach to such permit and to the exercise of the rights and privileges thereunder, such terms and conditions as are reasonable."

The issue thereby created was, "Had Goldstein been

granted the right to serve intermediate points in his original permit?"

 In determining this issue, as has been noted above, the commission is clothed with general powers to regulate and control carriers for hire within the state, and courts will not interfere with its administrative rulings when they are just and reasonable; also that procedure before it should not be tested by the technical rules of pleading.

 Who was in a position to know what rights had been granted Goldstein in the first instance if it was not the immediate authority issuing his permit? We will judicially notice the fact that there was no terminal on the Colorado-Wyoming state line on the route over which he was to operate, so it had to be some intermediate point, as the commission was without authority to designate a terminal in Wyoming. In the light of the record before us, the commission apparently acquiesced in what Goldstein believed to be his authority from the beginning, and while it might not be bound by what the chief inspector told Goldstein, it was clearly within its discretion to consider the acceptance of Goldstein's reports and fees on his intermediate service as factors in arriving at its final official recognition of a status which he claimed had existed from the beginning.

We have examined the cases from Texas and California, cited by counsel and note that a somewhat different conclusion is reached by the courts of those states, but in our opinion the facts involved are so different that the authorities are not applicable in the case at bar.

It should be said, however, and the commission no doubt has by this time learned, that a more definite designation of territory to be served should be set out in both the application and permit, and this no doubt was the factor which the General Assembly had in mind when its amendatory legislation was adopted in 1935, and prompted the commission to send out its notification letter of January 15, 1937.

It might be added, too, that there is not the slightest suggestion of fraud, ill will, collusion or bad faith in the record. The members of the commission are men of unquestioned integrity with a known devotion to faithful public service. It is common knowledge that the trucking business in Colorado, as well as elsewhere, has been in a high state of confusion in recent years, and the commission, realizing this, adopted the method described herein in an attempt to correct the situation, in part at least. Some other course within the law might have been chosen, but it acted within the line of its duty, and we think defendants in error failed to show "that the commission abused its discretion and exceeded its authority."

A writ of certiorari does not issue as a matter of right, but only on good cause shown. 51 C. J. 80. The burden of showing impropriety or illegality is upon the one asserting it. 51 C. J. 67.

The judgment is reversed and writ ordered discharged.

MR. CHIEF JUSTICE BURKE dissents.