No. 23407.

ASPEN AIRWAYS, INC., A COLORADO CORPORATION *v*. THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO AND MONARCH AVIATION, INC., A COLORADO CORPORATION.
(453 P.2d 789)

Decided April 28, 1969.

58

John F. Mueller, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Robert Lee Kessler, Assistant, for defendant in error The Public Utilities Commission.

Nelson, Hoskin & Groves, William H. Nelson, for defendant in error Monarch Aviation, Inc.

*In Department.*

Opinion by Mr. Justice Day.

This case was commenced before the Public Utilities Commission of the State of Colorado by an application of Monarch Aviation, Inc. for an amendment to its certificate of convenience and necessity to be permitted to operate an office for "the purpose of developing business" at Aspen, Colorado. Aspen Airways, Inc. appeared as a protestant at the hearing. We will refer to the parties as Monarch, Aspen and the Commission.

Monarch's application was granted by the Commission's decision No. 68447, and upon review in the district court of Arapahoe County, to which court the case was transferred after first being filed in the Denver district court, the decision of the Commission was affirmed. Aspen is here by writ of error seeking to overturn the decision.

At the time of the application before the Commission, Monarch, a non-scheduled air carrier, was operating under a certificate with "* * * authority to transport persons and property on call and demand between any and all points in the State of Colorado * * *" with the proviso, however, that either point of departure or point of destination of all flights must be within a radius of 100 miles of Grand Junction. (Aspen, Colorado, is less than 100 miles from Grand Junction.) In the certificate

there is the prohibition that Monarch could not establish an office to develop intrastate charter business at any place other than Grand Junction. (The prohibition did not apply to interstate charter business.) Additionally, Monarch's authority requires that its rates "for transportation of passengers between points served by air carriers operating on schedule over fixed routes, shall be at least 50% per passenger greater than the effective rates of fixed route carriers by airplane so operating on schedule between said points." Monarch has conducted a complete fixed base operation at Grand Junction since 1940. No change in Monarch's basic certificate was made other than to permit it to generate business from an office in Aspen, Colorado.

Aspen Airways holds a certificate to conduct, as a common carrier, both scheduled air service and charter service based in the town of Aspen, Colorado. It has held its charter certificate since 1958, and its scheduled certificate since 1959. In 1963 it was given authority to establish an office at Stapleton Air Field in Denver for the purpose of generating business for its scheduled intrastate air service between Denver and Aspen.

In 1964 Monarch entered into an agreement with Pitkin County to manage the Aspen Airport, called Sardy Field. It maintained an office and passenger waiting room in connection with its management activities, which consisted of general operation of the airport, supplying gasoline and oil, making tie-downs, renting aircraft, performing Unicom service and field advice, and making weather observations. From its Aspen office it conducted an interstate call and demand service, but it is admitted that by reason of its airport activities it, in fact, generated intrastate charter service at Aspen. Until the amendment, if Monarch received an inquiry, one of the employees would phone the Grand Junction office for clearance and then complete the charter service arrangements.

It is Aspen's contention that the Commission decision amending Monarch's certificate to now permit use of

an Aspen office to develop intrastate charter business is erroneous on four grounds:

I. That the Commission did not make basic findings of fact on which to base its ultimate finding that the public convenience and necessity required the granting of the application to Monarch;

II. That the Commission denied Aspen procedural due process by refusing to consider competent material evidence relating to the adequacy of Aspen's existing service.

III. That the decision and order of the Commission is unlawful in that it violates the doctrine of regulated monopoly;

IV. That the evidence upon which the Commission's decision was based concerned an unlawful operation by Monarch since 1964, and that such evidence in law is not competent to support the granting of additional operating rights.

## I.

Aspen first argues that the Commission's determination that the public convenience and necessity required the additional grant to Monarch was without any basic finding of fact of any kind concerning the existing available charter service between Aspen and Denver, much less a finding that such service was inadequate. We agree such findings are necessary. *Red Ball Motor Freight, Inc. v. Public Utilities Commission,* 154 Colo. 329, 390 P.2d 480. However, the crux of the argument advanced here goes more to the form of the findings of the Commission which consisted of a recapitulation of the testimony.

We do not condone the Commission's practice of merely summarizing the testimony of the various witnesses, as was done in this case. We have many times attempted to discourage the practice. In this case the Commission's "STATEMENT AND FINDINGS OF FACT BY THE COMMISSION" contains twelve pages of recapitulation of the testimony followed by two pages of "findings" and then the orders of the Commission. If the

summarized testimony had been contradicted or impeached, the mere recital thereof would not comport with the legal requirement of a finding. Nevertheless in this case the Commission's cognizance of the testimony is, in our opinion, tantamount to the adoption thereof as uncontroverted basic facts. We view it as a preliminary to and in support of the ultimate finding, which was:

"The Commission finds that the public is in need of charter service between Aspen and Denver; that public convenience and necessity require that the applicant have authority to establish an office at Aspen for the development of its intrastate charter business as is set out in the following order; that the existing available charter service between Aspen and Denver is inadequate. * * *"

The facts developed were that demand for charter service in and out of Aspen has been continuously increasing; that prospective passengers have experienced great difficulty in obtaining seats on scheduled flights between Denver and Aspen; that Monarch has four aircraft based at Aspen, two multi-engine planes and two single-engine aircraft for charter flights; that single-engine aircraft is not available from Aspen, which offers charter service only with two-engine aircraft; that such economical charter service is in demand; that Aspen has only one multi-engine plane which it uses also for its scheduled service. Several witnesses testified that they regularly use Monarch's charter to Denver and other cities after they have been unable to get on Aspen's scheduled flights.

As between conflicting statements, the Commission must make the finding to show which of the evidence it accepts as competent, worthy of belief, and that which it rejects. Nevertheless, the findings need not take any particular form; and in this case, if the summary of the evidence had been prefaced by the words, "we find the facts to be" there would have been no argument about the sufficiency of the findings. In

the instant case the form of the "statement" of the Commission is not fatal to the ultimate decision.

C.R.S. 1963, 115-6-15 "contemplates that there be in the Commission's files some evidence to support a decision and order which the courts can review and which will enable the court intelligently to determine whether the Commission has exceeded its jurisdiction, abused its discretion, and whether its order and decision is warranted by the facts." *Consolidated Freightways Corp. v. P.U.C.*, 158 Colo. 239, 406 P.2d 83. We believe that in this case both at the trial court level and here review has not been hampered.

On the matter of the inadequacy of the existing service, though not spelled out explicity in the Commission's statement and summary of evidence, there is the undisputed fact that Aspen Airways makes available for charter service at Sardy Field only one airplane, a two-engine Aero Commander, 500-B, which can carry six passengers. The Aero Commander is also used for scheduled service between Grand Junction and Aspen on Fridays, Saturdays and Sundays. Moreover, the same plane is the one used for experimental service to Rifle, so that there are few remaining times when it is available for charter service.

## II.

The second argument is predicated on the proposition advanced by Aspen that the Commission failed to consider evidence of the adequacy of Aspen's charter service and that it was, therefore, denied due process of law. We are not able to find in the record that Aspen was in any way precluded from offering everything which it wished to show to the Commission. Aspen alleges that the Commission's statement does not include evidence favorable to Aspen and that this, therefore, indicates its evidence was not considered. There is no merit to this contention. Actually, the Commission's decision takes note of the testimony of Aspen's president: his general description of Aspen's operation, "* * * its

authorities both interstate and intrastate; the value of its facilities; the amount of capital invested, all of which is very substantial, all of which — and it was so stipulated by counsel for Monarch and Aspen — showed that Aspen is a qualified carrier. * * *" We also note that some evidence unfavorable to Aspen was also missing from the summary of evidence by the Commission. As was aptly stated in *N.L.R.B. v. Swift and Company*, 116 F.2d 143:

"It is true the board has not undertaken to set forth in its findings any abstract or summary of all the evidence in the record. It has merely drawn from the whole evidence and presented as subsidiary findings the evidentiary facts upon which it has based its ultimate findings that specified provisions of the act were violated. It was not incumbent upon the board to recite all the evidence, or all the undisputed evidence, or the evidence from which inferences opposed to its own might have been drawn."

### III.

Aspen in this point of argument contends that the state's policy of regulated monopoly has been violated by this decision because there was no evidence in the record to show that Aspen's scheduled or charter service is inadequate to any material decree. *Ephraim Freightways, Inc. v. Public Utilities Commission of Colorado*, 151 Colo. 596, 380 P.2d 228; *Denver & R.G.W. R.R. v. Public Util. Comm'n*, 142 Colo. 400, 351 P.2d 278; *Archibald v. Public Util. Comm'n*, 115 Colo. 190, 171 P.2d 421. Aspen's scheduled service or the adequacy thereof was not material to the decision of the Commission. Inferences can be drawn from the record, however, that Aspen was more interested in advancing its scheduled service than in pushing to any degree its charter service. It had no authority to offer single-engine aircraft for charter. It had no substantial investment in equipment for multi-engine charter service and admits that in order to fulfill substantial requests for it, it would

have to rent equipment. With the protection afforded in the matter of Aspen's fares for scheduled operations, there appears to be little threat to Aspen's main operation. It had no other monopoly which it enjoyed because Monarch, under its authority of more than twenty years, had a right to originate flights from Aspen, it being within 100 miles of Grand Junction.

## IV.

 The final argument deals with the contention that the Commission's decision was based on evidence of operations carried on in violation of Monarch's certificate. In this connection the Commission found:

"The restriction in the authority as to the establishment of an office for the purpose of developing business involves a question of *intent*. The evidence is somewhat conflicting, however, the Commission finds that the applicant did not 'establish' or 'set up' the Aspen office for the purpose of 'developing' or 'promoting the growth of' its intrastate business, but that said office was actually established, and is used, for the purpose of carrying on its Agreement and for the additional purpose of carrying on its interstate business. Furthermore, the applicant expressly denies that such was its intent and the Commission finds that the evidence is insufficient to determine otherwise."

This finding is supported by the record. An administrative tribunal's interpretation of the meaning of its own rule or regulation is entitled to the utmost respect on judicial review. *Bowles v. Seminole Rock and Sand Co.*, 325 U.S. 410, 65 S. Ct. 1215, 89 L. Ed. 1700; *Westway Motor Freight, Inc. v. Public Utilities Commission*, 156 Colo. 508, 400 P.2d 444; *McKenna v. Nigro*, 150 Colo. 335, 372 P.2d 744.

As has been previously stated, the record shows that Aspen's scheduled flights were often full, and it is not reasonable to expect that Monarch would ignore all inquiries and offer no information or assistance to those

seeking air transportation out of Aspen, Colorado, when inquiries would, as a matter of course, be made at its airport management office.

The judgment is affirmed.

MR. JUSTICE PRINGLE, MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.