759 P.2d 40 (1988)
COLORADO MUNICIPAL LEAGUE, Petitioner-Appellant,
v.
MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY; the Public Utilities Commission of the State of Colorado; Commissioners Andra Schmidt, Ronald L. Lehr and Arnold H. Cook, Respondents-Appellees.
No. 86SA347.
Supreme Court of Colorado, En Banc.
July 18, 1988.
Rehearing Denied August 22, 1988.
*41 Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, Dudley P. Spiller, Jr., Peter R. Nadel, Denver, for petitioner-appellant.
Coleman M. Connolly, Denver, for respondent-appellee Mountain States Tele. & Tele. Co.
Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John E. Archibold, Sp. Asst. Atty. Gen., Denver, for respondents-appellees Public Utilities Com'n, Com'rs Andra Schmidt, Ronald L. Lehr and Arnold H. Cook.
VOLLACK, Justice.
In this case we must decide whether the Public Utilities Commission (Commission) followed our instructions in Colorado Municipal League v. Public Utilities Commission, 687 P.2d 416 (Colo.1984), concerning productivity offsets to wage increases occurring during the test period. We conclude that it has not, and therefore reverse the judgment of the district court.

I.
In 1980, Mountain States Telephone and Telegraph Co. (Mountain Bell) sought to raise $78,628,044 in revenue through a rate increase. The Colorado Municipal League (League) intervened, arguing that Mountain Bell's rate actually should be decreased. The League claimed that whatever additional cost Mountain Bell experienced as a result of higher wages and salaries would be completely offset by increased revenue from higher labor productivity. The Commission suspended the proposed rate increase and held hearings. On September 16, 1980, the Commission issued its original order.[1] The original order denied the rate increase requested by Mountain *42 Bell. The Commission also rejected the League's request to lower the rate.
The League appealed the original order to the Denver District Court after exhausting its administrative remedies. The district court affirmed the original order. This court affirmed in part and reversed in part in Colorado Municipal League v. Public Utilities Commission, 687 P.2d 416 (Colo.1984) (Colorado Municipal League I).[2]
In Colorado Municipal League I, we recognized that, in substance, the Commission had employed year-end test period data for wages and salaries,[3] and average test period data for almost everything else. Id. at 423. We pointed out that, in considering test year data, it is "not enough to look at only wage rates or expenses" because total labor cost is affected by a number of other factors.[4]Id. at 424 (quoting Re Pac. Tel. & Tel. Co., 53 PUR3d 513, 572, 576 (Cal. PUC 1964), aff'd in part, rev'd in part, 62 Cal.2d 634, 674, 401 P.2d 353, 378, 44 Cal.Rptr. 1, 26 (1965)). We stated that the critical defect in the Commission's order was its failure to make adequate findings supporting its decision to annualize in-period wage increases without annualizing other components of expense and revenue. Id. at 425. We concluded that "annualization of test period wage increases alone strongly suggests that the PUC has abused its discretion." Id. We recognized, however, that the Commission could annualize one variable alone without abusing its discretion so long as its order was based on findings supported by substantial evidence in the record. We then reviewed the record for evidence supporting a finding that in-period wage and salary increases do not require a corresponding offset for increased labor productivity.
In reviewing the record, we examined the testimony of Monte Shriver, Mountain Bell's district staff manager. He provided the only possible evidence at the time that no productivity offset was required. We held that, in context, Mr. Shriver's statement that no productivity offset was required was "more an estimation of the legal effect of our holding in Mountain States Tel. & Tel. Co. v. PUC, 182 Colo. 269, 513 P.2d 721 (1973), ... than a statement of fact or an expert opinion." Colorado Mun. League I, 687 P.2d at 425-26 (footnote omitted). Accordingly, we held that there was no substantial evidence in the record to support an express or implied finding on the productivity offset issue and, for that reason, concluded that the Commission's order was arbitrary and capricious. We reversed the Commission's order on this issue with no guidance other than to hold that, in the absence of adequate findings of fact, the order permitting annualization of wage and salary increases without "adjustment or offset for other changes" was arbitrary and capricious. Id. at 426.
In conjunction with this holding, we examined the Commission's characterization of $506,000, the amount by which Mountain Bell's earnings exceeded its pro forma revenue *43 requirement in the test year, as de minimis.[5] We held that this characterization was "marginally acceptable." Id. at 428. Although we declined to reverse the Commission for that reason alone, we directed the Commission to examine whether its finding on the productivity offset issue would affect the amount by which earnings exceeded the revenue requirement for the test year, and if so, whether the adjusted amount was substantial enough to merit additional findings on whether the 1980 rate of return on the rate base was no longer appropriate. Id. We remanded the case to the district court with instructions to set aside the original order and to remand the case to the Commission for additional findings on these two issues.
The district court set aside the original order and remanded the case to the Commission. On July 12, 1985, the Commission's staff sent its comments to the Commission. The staff argued that there was no evidence in the record to support a finding that in-period wage increases could be made without a productivity offset.[6]
On August 20, 1985, the Commission issued its supplemental decision to the original order. Despite a contrary recommendation by its staff, the Commission made express findings that no productivity offset was required. Based on "the record as already made," it found that labor productivity is "inherently reflected in the revenues associated with that test period." It concluded that a separate productivity offset for in-period wage and salary increases "would result in double counting, distorting a proper matching relationship [between the test year variables of revenue, cost, and investment], and would be harmful both to Mountain Bell and to its ratepayers." The Commission also found that determination of the excess $506,000 had become "moot" because it had concluded that no productivity offset was required. The Commission adopted these findings nunc pro tunc as of September 16, 1980.
The League requested the Commission to reconsider its supplemental decision. That request was denied.
After exhausting its administrative remedies, the League sought judicial review of the supplemental decision in Denver District Court. The district court observed that the Commission did discuss the two issues that were the subject of the remand. It characterized the Commission's findings as "skimpy" but "adequate to comply with the remand," and held that the Commission did not abuse its discretion in readopting the original order.
*44 At a separate hearing, the League sought to depose a member of the Commission. It alleged that two of the commissioners failed to review the record in approving the supplemental decision, relied solely on the decision of the one commissioner who was present when the original decision was adopted, and considered evidence outside of the record. The district court issued protective orders prohibiting the League from deposing members of the Commission. The League appealed the judgment of the district court to this court pursuant to section 40-6-115(5), 17 C.R.S. (1984).

II.

A.
Our review of administrative decisions is limited to three concerns: whether the Commission has regularly pursued its authority; whether its decisions are just and reasonable; and whether its conclusions are in accordance with the evidence. Colorado Office of Consumer Counsel v. Public Util. Comm'n, 752 P.2d 1049, 1057 (Colo.1988); § 40-6-115(3), 17 C.R.S. (1984). Orders of the Commission are presumed to be reasonable and valid. Caldwell v. Public Util. Comm'n, 200 Colo. 134, 137, 613 P.2d 328, 330 (1980). The party challenging an order bears the burden of showing its impropriety. Public Util. Comm'n v. Weicker Transp. Co., 102 Colo. 211, 217, 78 P.2d 633, 636 (1938). A reviewing court may not substitute its judgment for that of the Commission. Public Serv. Co. v. Public Util. Comm'n, 644 P.2d 933, 940 (Colo.1982). Findings will not be set aside merely because evidence before the Commission is conflicting or because more than one inference can be drawn from the evidence. Morey v. Public Util. Comm'n, 629 P.2d 1061, 1068 (Colo.1981). Findings may be express or implied from the reading of the record as a whole. See Aspen Airways, Inc. v. Public Util. Comm'n, 169 Colo. 56, 62, 453 P.2d 789, 792 (1969). A reviewing court may not modify or set aside an order that is supported by competent evidence. Colorado Mun. League I, 687 P.2d at 419.
For purposes of judicial review of administrative decisions, competent evidence is the same as substantial evidence. Compare Morey, 629 P.2d at 1068 ("competent evidence" is quantum of evidence sufficient to support an administrative decision) with City of Montrose v. Public Util. Comm'n, 629 P.2d 619, 622 (Colo.1981) ("substantial evidence" is quantum of evidence sufficient to support an administrative decision).
Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,"... and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.
NLRB v. Columbian Enameling & Stamping Co., Inc., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). See generally 5 K. Davis, Administrative Law Treatise § 29:5 (2d ed. 1984) (discussing substantial evidence standard). Evidence must be viewed in the light most favorable to the Commission's findings. See Peoples Natural Gas Div. v. Public Util. Comm'n, 193 Colo. 421, 427, 567 P.2d 377, 381 (1977). The question of whether an order is supported by adequate findings of fact, however, is a question of law. See Public Util. Comm'n v. Northwest Water Corp., 168 Colo. 154, 169-70, 451 P.2d 266, 273-74 (1969). With these principles in mind, we turn to the supplemental decision of August 20, 1985.

B.
The League argues that the Commission's finding in the supplemental decision that no productivity offset is required was arbitrary and capricious. It claims that, other than the statement of Mountain Bell District Manager Shriver, which we characterized in Colorado Municipal League I as more of a legal estimate than an expert *45 opinion, no evidence exists in the record to support the Commission's finding that no productivity offset is required. Mountain Bell contends that the Commission made its finding not only because of Mr. Shriver's statement but also because it reasoned that an in-period productivity offset would distort the matching relationships in test year data and penalize the most productive utilities. We conclude that neither possible rationale supports the Commission's decision to reject a productivity offset.

1.
In the hearings prior to the original order, Mr. Shriver stated on cross-examination that no productivity offset was required for in-period wage and salary increases. As we concluded in Colorado Municipal League I, however, this statement was more of a legal estimate than an expert opinion. Accordingly, it cannot support the finding made by the Commission.
The Commission also stated in the supplemental decision that an in-period productivity offset would distort the matching relationships in test year data and penalize the most productive utilities. These additional reasons would support a finding that no productivity offset is required if there was substantial evidence in the record to support them.
The Commission may take official notice of facts within its special expertise, such as information gathered through its own investigation. Consolidated Freightways Corp. v. Public Util. Comm'n, 158 Colo. 239, 253, 406 P.2d 83, 90 (1965). Whatever official notice the Commission takes of facts within its special expertise, however, must be based on evidence already in the record. See generally B. Schwartz, Administrative Law § 7.16, at 379 (1984) ("If an agency uses official notice, the specific facts of which notice is taken and their source must be stated....") (footnote omitted) (emphasis added). While productivity offsets might well distort the matching relationships in test year data and provide an economic penalty to the most productive utilities, the record is devoid of evidence to support these conclusions. We therefore cannot rely on these additional reasons as a basis for the finding. We conclude that neither Mr. Shriver's testimony nor the Commission's official notice of facts within its special expertise constitutes substantial evidence to support its finding in the supplemental decision that no productivity offset is required.

2.
This does not end our inquiry, however. A reviewing court must search the record for evidence favorable to the prevailing party below. North E. Motor Freight, Inc. v. Public Util. Comm'n, 178 Colo. 433, 437, 498 P.2d 923, 925 (1972); Hipps v. Hennig, 167 Colo. 358, 363, 447 P.2d 700, 702 (1968). We must therefore look to sources in the record other than those raised by the parties for evidence to support the Commission's findings. One such source is an exhibit produced by Mr. Shriver and admitted without objection. Another such source is the testimony of Eric L. Jorgensen, a staff member of the Commission. We reject both sources as possible bases for the Commission's finding that no offset is required.
At the hearings prior to the original order, Mr. Shriver introduced a fifty-four page exhibit relating to the proposed rate increase. Two pages of the exhibit contained annualized estimates of the 1979 and 1980 wage and salary adjustments proposed by Mountain Bell. The 1980 wage and salary proposal contained a productivity offset while the 1979 wage and salary proposal did not. By negative implication, the fact that the 1980 wage and salary proposals contained a productivity offset while the 1979 wage and salary proposals did not, could be construed to support the Commission's finding, inasmuch as failure to adopt a proposal signals its rejection. We decline to adopt this attenuated reasoning. Instead, we require evidence upon which a finding is based to be discernible from a fair reading of the record. We conclude that this exhibit does not support the Commission's finding.
Mr. Jorgensen testified on cross-examination that he and a colleague had reviewed *46 the 1979 and 1980 wage and salary adjustments in the exhibit introduced by Mr. Shriver. After reviewing these figures, Mr. Jorgensen "concluded that the adjustments made on the '79 wage package were proper." It becomes evident from his testimony, however, that Mr. Jorgensen had not actually considered the issue of productivity offsets to the 1979 wage and salary increases, and that the "adjustments" about which he was concerned related not to productivity offsets but to annualizing the wage and salary increases which had gone into effect in 1979.
We therefore conclude as a matter of law that there is no substantial evidence in the present record to justify the Commission's finding in the supplemental decision of August 20, 1985, that no productivity offset is required.[7]

III.
Despite the great deference we must accord to findings of the Commission, we conclude that the supplemental decision was arbitrary and capricious because its finding that no productivity offset is required was not based on substantial evidence in the record. Because we reverse the judgment of the district court for lack of substantial evidence in the record to support the Commission's findings, we do not need to reach the issue regarding deposition of members of the Commission.[8]
The judgment of the district court is reversed. The case is remanded to the district court with directions to set aside the supplemental decision of August 20, 1985, and to remand the case to the Commission for proceedings consistent with this opinion.
ROVIRA, J., dissents, and KIRSHBAUM, J., joins in this dissent.
QUINN, C.J., does not participate.
ROVIRA, Justice, dissenting:
In Colorado Municipal League v. Public Utilities Commission, 687 P.2d 416 (Colo.1984) (Colorado Municipal League I), we concluded that the Public Utilities Commission (PUC) had erred as a matter of law because it failed to make explanatory findings of fact concerning its decision to annualize in-period wage increases without a productivity offset. We reversed and remanded with the admonition that: "We offer no guidance to the PUC in the resolution of this issue, except to say that its order is arbitrary and capricious in annualizing test period wage increases with no accompanying adjustment or offset for other changes in absence of adequate findings of fact." 687 P.2d at 426.
On remand to the PUC, the Colorado Municipal League (CML) took the position that the PUC was limited to the evidentiary record as it then existed except as to matters relating to a refund and attorney fees. The staff of the PUC was of the view that the evidentiary record already made should be initially considered, and evidentiary hearings should be held only if the existing record was insufficient to comply with this court's 1984 opinion. Mountain Bell concurred in the staff position.
The PUC, following what I perceive to be a correct reading of Colorado Municipal League I, took no further evidence but did make explanatory findings of fact concerning its decision to annualize test period wage increases without a productivity adjustment.
*47 The PUC, in its 1985 supplemental decision, found that price level increases to Mountain Bell's booked wage and salary expenses are warranted in order to properly and consistently maintain revenues, expenses, and rate base during the test year. Further, the PUC found that Mountain Bell properly adjusted wage and salary expense to reflect in-period wage increases. The PUC also found that the effect of the adjustments is to place salary costs into the test year as if the increases had occurred on the first day of the test period using the average number of employees during the test period. The PUC then explained why it did not apply a productivity offset to this in-period wage increase:
6. To measure productivity associated with wages, total revenue is divided by weighted man hours. Productivity obtained by Mountain Bell during the test period itself is inherently reflected in the revenues associated with that test period. That is why the proposal by Jamshed K. Madan, who appeared on behalf of Colorado Ski Country USA and Colorado-Wyoming Motel and Hotel Association (Ski Country), to reduce the in-period wage increase by a productivity offset, is inherently flawed. To deduct productivity that has already been included in Company revenues from the wage increase expense within the test period, the result [is] a double counting and a distortion of the matching relationship among revenue, expense, and investment. To adopt the type of adjustment proposed by Ski Country witness Madan would result in a utility which had the least amount of productivity being rewarded for not being productive. The more productive utility would be penalized by having its productivity double counted against it within the test year.
(Emphasis in original.)
Finally, the PUC noted that it had made in-period test year adjustments in rate cases affecting Mountain Bell since 1968, and that it had consistently annualized adjustments for changes in wages during the test period without a productivity offset.[1]
By way of conclusion, the PUC held that:
[A]n in-period productivity offset would distort the matching relationship and result in a disincentive rather than an incentive for productivity.... We conclude that a separate in-period productivity offset to the wage increases would result in double counting, distorting a proper matching relationship, and would be harmful both to Mountain Bell and its ratepayers.
The majority holds that without further evidence in the record the PUC could not make the findings necessary to support its supplemental decision. I disagree. I read Colorado Municipal League I to allow the PUC to explain the basis for its decision based on the existing record. If our intent was to the contrary, we would have remanded with instructions to have a further evidentiary hearing, and not allow the alternative of explanatory findings of fact.
In my opinion, the PUC has followed both the letter and spirit of our mandate and has provided adequate and rational findings explaining why it allowed annualization of test period wage increases with no adjustment for productivity.
Accordingly, I would affirm the judgment of the district court upholding the PUC's decision.
I am authorized to state that Justice KIRSHBAUM joins in this dissent.
NOTES
[1] In order to avoid confusion, we will call the Commission's order of September 16, 1980, the "original order" and the Commission's order of August 20, 1985, the "supplemental decision."
[2] This case is a continuation of the dispute begun in Colorado Municipal League I. For convenience, this case can be referred to as Colorado Municipal League II even though the nominal respondents-appellees in this case are not the same as the respondents-appellees in Colorado Municipal League I.
[3] The test year selected by Mountain Bell began on November 1, 1978, and ended on October 31, 1979. Three wage and salary changes occurred during the test year as a result of a contract negotiated in 1977. Salary plans for certain managers were changed on January 1, 1979. Wages of craft and clerical employees increased on August 5, 1979. Salary plans for other supervisory and technical employees were changed on October 1, 1979.

In addition to these three in-period wage and salary adjustments, an out-of-period wage and salary adjustment had to be considered by the Commission because the contract negotiated in 1977 expired on August 9, 1980. The parties recognize that a productivity offset to the out-of-period wage and salary increases of 1980 was proposed by Mountain Bell and adopted by the Commission.
[4] The Pacific Telephone & Telegraph Co. case recognized that other factors affecting total labor cost include:

(1) the number of employees;
(2) the composition of the work force;
(3) the state of technology in the industry;
(4) the company's overtime policy;
(5) employee salary levels; and
(6) external operating forces.
[5] In the original order, the Commission approved a rate base of $946,260,000. It determined that the overall return on the rate base should be 10.07%. Mountain Bell's revenue requirement for the test year was calculated by multiplying the rate base by the overall return on the rate base. This amount was calculated to be $95,289,000 (= $946,260,000 × 0.1007). Mountain Bell's test year pro forma earnings were determined to be $95,795,000. In this case earnings exceeded Mountain Bell's revenue requirement by $506,000 (= $95,795,000 - $95,289,000).

This amount, which represents about one-half of one percent of the revenue requirement, was considered by the Commission to be so insignificant that it concluded that the overall return on the rate base did not need to be changed.
[6] The staff also stated that there was "ample evidence" to support a finding that productivity offsets should be made, but recognized that the Commission was not required to accept evidence it found to be erroneous, incorrect, or unsupported. See, e.g., Mountain States Tel. & Tel. Co. v. Public Util. Comm'n, 195 Colo. 130, 142, 576 P.2d 544, 553 (1978).

The staff listed four options for the Commission to consider. The Commission could:
(1) find that the in-period wage and salary increases do not require a productivity offset;
(2) make no findings concerning productivity offsets;
(3) reject the finding that wages and salaries should be increased because the Commission did not decide the amount of the labor productivity offset; and
(4) take additional evidence on the productivity offset issue.
The staff believed that the first option was not viable because there was no competent evidence in the record to support such a finding. The staff also believed that the second option was not viable because the Colorado Municipal League I decision required the Commission to make explicit findings on the issue of labor productivity offsets. As a result, the staff concluded that the Commission should either reject the finding in the original order that wages and salaries should be increased without a productivity offset or take additional evidence on the productivity offset issue.
[7] This does not preclude the Commission from taking new evidence and making additional findings based on this new evidence.
[8] The Commission in the supplemental decision did not determine whether the 1980 overall return on the rate base should be adjusted because the amount by which Mountain Bell's earnings exceeded its revenue requirement in the test year could change when the issue of productivity offsets was considered. The Commission characterized this determination as "moot." Because we conclude that the issue of productivity offsets has not yet been decided by the Commission, this determination is not moot. On remand, the Commission must address whether the 1980 overall return on the rate base should be adjusted if it finds that an "adjustment or offset for other changes" is required. See Colorado Mun. League I, 687 P.2d at 426. If it does not find that "an adjustment or offset for other changes" is required, then the Commission need not reach this issue.
[1] The PUC distinguished between a productivity offset for an in-period wage increase and one for an out-of-period wage increase. The former is measured by the receipt of revenues in the test period. The latter must have some kind of productivity offset in order to maintain a proper matching relationship.