The CITY OF COLORADO SPRINGS, a home rule city and Colorado municipal corporation, Petitioner/Cross–Respondent,

v.

David L. GIVAN, Respondent/Cross–Petitioner.

No. 94SC47.

Supreme Court of Colorado,
En Banc.

June 5, 1995.

James G. Colvin II, City Atty., Stacy L. Rouse, Sr. Corporate Atty., Colorado Springs, for petitioner/cross-respondent.

Cornish & Dell'Olio, Craig M. Cornish, Colorado Springs, for respondent/cross-petitioner.

Justice MULLARKEY delivered the Opinion of the Court.

Petitioner, the City of Colorado Springs (the City), discharged one of its employees, the respondent, David Givan (Givan), upon his conviction of felony incest. Pursuant to the provisions of the City's Personnel Policies and Procedures Manual (PPPM), Givan appealed the City's decision to the municipal court. The municipal court found that the City's decision constituted an abuse of discretion and ordered Givan reinstated.

The City filed for review of the decision of the municipal court in the district court pursuant to C.R.C.P. 106(a)(4), and Givan filed a counterclaim pursuant to 42 U.S.C. § 1983 on grounds that his dismissal violated his constitutional substantive due process rights. The district court upheld the findings of the municipal court on grounds that the municipal court did not abuse its discretion, but entered summary judgment for the City on Givan's substantive due process claim and denied Givan's request to amend his complaint to include a breach of contract claim.

The court of appeals affirmed the district court's ruling under C.R.C.P. 106, but reversed the district court's entry of summary judgment and denial of Givan's request to amend the complaint. *Givan v. City of Colorado Springs*, 876 P.2d 27 (Colo.App.1993).

On the City's petition to this court, we granted certiorari and now reverse the judgment of the court of appeals.[1]

## I.

Givan had been employed by the City of Colorado Springs for twenty years when, in October of 1989, he pled guilty to and was convicted of felony incest in violation of section 18–6–301, 8B C.R.S. (1986).[2] The incest conviction was based on Givan's sexual abuse of one of his two adopted daughters. While Givan was charged with a single incident of sexual contact, according to the record, there was a history of abuse that began with fondling when the girl was between four and six years old, culminated in sexual intercourse when the girl was ten years old, and continued for one to two years after that. Although Givan initially denied the allegations of abuse, he ultimately confessed to the charges and pled guilty. He was sentenced to five years of supervised probation and required to continue treatment in an incest perpetrators group.

At the time of his conviction, Givan was an electronic working foreman in the Water Division of the City's Utilities Department. As required by the City's PPPM, Givan reported the conviction to the head of the Water Division, Edward Bailey. Under the PPPM, conviction of a felony is grounds for discharge from City employment. Accordingly, Bailey conducted a pre-termination meeting with Givan and determined that discharge was the proper action to be taken.

Pursuant to the PPPM, Givan appealed his discharge first to Deputy City Manager of Utilities, James Phillips, then to City Manager, Roy Pederson, both of whom affirmed Bailey's decision. As the final recourse under City procedures, Givan appealed to the municipal court which found the discharge to be an abuse of discretion and reversed the City's decision.

The City filed for review of the municipal court's decision in the district court pursuant to C.R.C.P. 106. On appeal, the City argued that because the record before the City Manager contained competent evidence to support the decision to discharge Givan, the municipal court had abused its discretion in reversing the City Manager's decision. Givan asserted a counterclaim under 42 U.S.C. § 1983 (1994)[3] on grounds that the city had deprived him of property in violation of the substantive due process requirements of the Fourteenth Amendment to the United States Constitution by discharging him for arbitrary and capricious reasons. He later sought to amend his counterclaim to include a state law claim for willful breach of contract.

---

1. We granted certiorari to review the following issues:

    1. Whether the court of appeals erred in finding no competent evidence in the record to support the city manager's decision to discharge Givan.
    2. Whether the court of appeals erred in holding that Givan has a substantive due process right to continued employment, and, if such a right exists, whether it was violated in this case.
    3. Whether the court of appeals erred in holding that the district court abused its discretion in refusing to allow Givan to amend his pleadings to include a counterclaim that the City had willfully violated its contract of employment with Givan.
    4. Whether the court of appeals erred in rejecting Givan's claim that he was entitled to partial summary judgment on his section 1983 claim.

2. § 18–6–301(1) provides:

    Any person who knowingly marries, inflicts sexual penetration or sexual intrusion on, or subjects to sexual contact, as defined in section 18–3–401, an ancestor or descendant, including a natural child, child by adoption, or stepchild twenty-one years of age or older ... commits incest which is a class 4 felony....

3. 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The district court dismissed the City's claim and held that the municipal court did not abuse its discretion in reversing the City's decision to discharge Givan. It also entered summary judgment dismissing Givan's section 1983 claim and refused to allow him to amend the pleadings to include a breach of contract claim. The court of appeals affirmed the judgment of the district court and held that the City's decision to terminate Givan was not supported by competent evidence. However, it found that material issues of fact remained concerning Givan's section 1983 claim and that the trial court erred in refusing to consider Givan's breach of contract claim because it was a compulsory counterclaim.

## II.

### A.

■ We review this case pursuant to C.R.C.P. 106(a)(4) which provides:

Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided for by law:

(I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

When reviewing a decision under C.R.C.P. 106(a)(4), a court considers whether an erroneous legal standard was applied by the governmental body. *Electric Power Research Inst. v. City & County of Denver*, 737 P.2d 822, 826 (Colo.1987). C.R.C.P. 106(a)(4) also permits a district court to reverse a decision of an inferior tribunal only if there is "no competent evidence" to support the decision. "No competent evidence" means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority.

*Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304, 1308–09 (Colo.1986) (citations omitted); *Sellon v. City of Manitou Springs*,

745 P.2d 229, 235 (Colo.1987). We have held that for purposes of judicial review "competent evidence is the same as substantial evidence." *Colorado Municipal League v. Mountain States Telephone*, 759 P.2d 40, 44 (Colo.1988).

Substantial evidence ... "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," ... and must be enough to justify, if the trial were before a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

*Id.* (citations omitted).

■ Under C.R.C.P. 106, the appropriate consideration for an appellate court is "whether there is sufficient evidentiary support for the [decision reached by the] *administrative tribunal,*" not whether there is adequate evidentiary support for the *lower court's* decision on reviewing the record. *Id.* at 1309 (emphasis added). Therefore, an appellate court is in the same position as the district court in reviewing an administrative decision under Rule 106. *Empiregas, Inc. v. Pueblo County Court*, 713 P.2d 937, 939 (Colo.1985).

■ The municipal court's ruling in this case was issued as the final appeal available to an employee under the Personnel Policies and Procedures promulgated by the City Manager pursuant to City ordinance. The PPPM requires a full evidentiary hearing and a written response at each level of appeal within the city hierarchy. Under the procedures in effect at the time of Givan's discharge, after appealing to the City Manager, an employee could make one final appeal to the municipal court. However, the municipal court is not authorized to independently determine whether discharge is appropriate. The PPPM provides that the parties may only present evidence to the municipal judge that had been introduced at the hearing before the City Manager. Further, the scope of review by the municipal judge can not "extend ... further than to determine whether the City Manager exceeded his jurisdiction or abused his discretion." Accordingly, the scope of review of the City Manag-

er's disciplinary decision authorized under the PPPM is the same as that applied under C.R.C.P. 106(a)(4).

Because the review by the municipal court authorized under the PPPM in this case is the same as that authorized under C.R.C.P. 106(a)(4), we are in the same position as the municipal court in reviewing the decision to discharge Givan in this case. We therefore must determine whether there is any competent evidence supporting the *City Manager's decision* under the PPPM, not whether there was competent evidence supporting the municipal court's determination.[4]

### 1.

The PPPM gives the City authority to discharge an employee for "conviction of a felony" and for conduct unbecoming a City employee. Discharge is not automatic, however. The PPPM mandates certain procedures that the City must follow before discharging an employee for any reason. It requires that:

> No permanent employee shall be discharged without being afforded a pre-termination meeting. Such a meeting shall be conducted by the Department/Division Head or the City Manager.

Prior to the meeting the employee must receive notice of the purpose of the meeting; at the meeting the employee must receive an explanation of the allegations, of the supporting evidence, and reasons for the proposed termination; and the employee must be given an opportunity to respond. The final decision must be communicated in writing to the employee, and a letter of discharge provided. The employee then has the opportunity to appeal the termination decision, according to who made the initial discharge decision, to the Department/Division Head, then to the Deputy City Manager or the City Manager, and finally to the municipal court.

Givan has not challenged the City's adherence to these procedures.

The PPPM mandates special procedures when an employee has been convicted of a felony. The PPPM requires an employee who has been convicted of a felony to report the conviction to a supervisor. Upon notification that an employee has been convicted of a felony, the PPPM requires that:

> the Department/Division Head, the appropriate Deputy City Manager and the Director of Human Resources shall determine the proper action to be taken. Factors considered may include the nature and type of the crime, the employee's City position, the employee's prior job performance, the employee's length of service, and the employee's fitness to perform. The City reserves the right to discipline an employee, up to and including discharge for conviction of any local, state, or federal criminal laws which, in its sole judgment, renders the employee unfit to perform their job, brings disrepute upon, and/or compromises the integrity of the City of Colorado Springs.

Accordingly, the City has discretion to discharge employees convicted of a felony, if upon consideration of the appropriate factors, it finds that (1) the employee is unfit· to perform the job; or (2) the retention of the employee would have an adverse effect on public perception of the City. We find that the City considered the appropriate factors and made appropriate findings to support its decision to discharge Givan.

In his letter notifying Givan of his discharge, the City Manager recited the factors enumerated in the PPPM. He then stated:

> A great deal of time at the hearing was spent in taking testimony from your coworkers, subordinates, and peers. Many of these witnesses testified that even though they were familiar in a general sense that you had been convicted of com-

---

4. The municipal judge reviewed the transcript of the hearing held before the City Manager and held:

   I am unable to find any competent evidence that would support the decision of the City Manager Roy Pederson to terminate the employment of David L. Givan with the City of Colorado Springs. This means that the decision of the administrative body (City Manager) is so devoid of evidentiary support that Givan's conviction of the felony of incest rendered him unfit to perform his job, brought disrepute upon and/or compromised the integrity of the City of Colorado Springs that the decision to terminate employment can only be explained as an arbitrary and capricious exercise of authority.

mitting incest, they were nonetheless willing to continue working with you. Several of these witnesses were employees which you supervised. There was also testimony that not all of the employees who worked with you were as receptive to have you return to work. I do not find that this line of testimony is helpful in determining what type of discipline to impose in this case.

Due to the serious nature of the crime in which you were convicted of [sic] as well as your position with this organization, I hereby adopt the findings made by James Phillips in his letter of discharge to you on February 21, 1990, and find that pursuant to the guidelines set forth in the Policies and Procedures Manual, you have been rendered unfit to perform your job, have brought disrepute upon and have compromised the integrity of the City of Colorado Springs. Consequently, I have determined to discharge you from your position with the City of Colorado Springs effective this date.

The findings made by James Phillips and adopted by the City Manager were as follows:

Mr. Givan was found guilty of a Class 4 Felony (Incest). The nature of the crime is against the norms of the society in general, bringing disrepute to the person involved and considered beyond acceptable standards of right behavior. It, therefore, would reflect on the moral character of every City employee by association, if accepted.

The employee is a supervisor of six persons in an Electronic Working Foreman position. He is not in direct contact with the public but with many fellow workers.

The employee's past job performance has been good. The employee has been with the City for 21 years.

The employee's fitness to perform must be based on two areas—technical skill and effect on subordinates and other workers. A diminishment of technical skills is not expected unless outside problems affect the job through loss of concentration or stress-related difficulties.

The effect on subordinates is subjective in nature but is viewed that due to the nature of the act, morale of subordinates and other employees would be affected. Once a supervisor loses the respect of his/her employees, major problems occur. These extend from refusal to obey, destroying productivity, to blackmail for cover-up of others' infractions, i.e. "Why should you be upset that I am late for work when you got off on a felony charge?"

Although Mr. Givan has a number of letters from fellow employees praising his abilities, only two were from his six subordinates. . . .

Mr. Givan has stated that he would take a reduction in job status to Technician or Specialist and give up his supervisory position. This is not a solution. A supervisor demoted to the same work group causes employee problems. Second-guessing the existing supervisor is not uncommon, and morale and productivity drop.

It is my position that Mr. Givan has been rendered unfit to perform his job by his felony conviction for incest. If returned to work, he would bring disrepute upon his fellow City employees by reputation and would compromise the integrity of the City since his soundness of moral principle and character have been found lacking.

From this statement of findings it is clear that the City in fact took into account the factors specified in the PPPM. Furthermore, these statements reveal that, based on its consideration of these factors, it made the two specific findings that require discharge upon a felony conviction: that the felony conviction rendered Mr. Givan unfit to perform the job and that his retention reflected badly on the integrity of the City.

2.

We also find that there was competent evidence in the record to support the City's findings. In the hearings held before the City Manager, fifteen witnesses testified concerning Givan's discharge.[5] In addition, Gi-

---

5. The fifteen witnesses were Dr. Witty, the clinical psychologist conducting Givan's incest thera-

py group; Edward Bailey, manager of the City Water Division who made the initial decision to

van presented twenty-two letters thanking him for volunteer efforts, supporting lenient sentencing after his incest conviction, and opposing his discharge from the City. Of these, six were from co-workers who also testified at his hearing. The record also contained Givan's psychological evaluation by Dr. Witty and copies of several of Givan's work evaluations.

With respect to Givan's fitness to perform his job, Givan's job evaluations and the testimony of his supervisors demonstrate that Givan was a valuable and skilled worker who had been with the City for many years. The evidence also shows that there was no reason to believe that his ability to perform the technical aspects of his job would be impaired by the incest conviction. Testimony from his co-workers shows that their respect for the quality of his work was also high.

Nevertheless, there is testimony on the record supporting the City Manager's conclusion that knowledge of Givan's crime had an adverse impact on his relationship with co-workers and subordinates.[6] In particular, one co-worker admitted that "[t]hings of this sort are going to have to enter into your mind. I'm a father. I have two daughters. They're pretty young, but—." Another flatly stated, "I think I can work with [Givan]. I don't think I could have him manage me." The supervisor of the plant where Givan worked testified that female members of the plant staff in particular did not want to see Givan return to work.

While the majority of Givan's co-workers and subordinates testified that their working relationships with Givan were unaffected by knowledge of his conviction, when questioned about their knowledge of the crime commit-

ted, none was aware of the nature of the contact between Givan and his daughter. One believed that Givan had pled guilty to avoid a lawsuit. Another believed that he had been convicted of attempt to commit incest. The letters of support offered by Givan likewise reflected that the writers either had limited or no knowledge of the crime Givan committed. These factors reasonably could affect the credibility of this evidence in the judgment of the City Manager.

With the exception of Givan's foreman, Givan's supervisors and City management believed that Givan's incest conviction would adversely affect workplace morale and Givan's ability to supervise others. Specifically, they were concerned that subordinates would lose respect for Givan and it then would be difficult for Givan to impose discipline. Those who were aware of the charges against Givan prior to his conviction also expressed concern that Givan had initially claimed that he was innocent and that he considered a guilty plea purely because he could not afford to continue his legal defense. Edward Bailey, who held a pre-termination hearing with Givan, was concerned that Givan expressed no "serious remorse or concern regarding the incident itself." The City could reasonably find that these factors reflected adversely on Givan's character and judgment, his ability to supervise others, and thus his fitness to perform his job. Likewise, the City reasonably could accord more weight to the opinions of those who had management experience than those who did not.

discharge Givan; James D. Phillips, Deputy City Manager of Utilities who heard Givan's first appeal; Lee Osterle, the licensed clinical social worker who provided family therapy to Givan and his wife; Barry Thieman, electronics specialist and Givan's co-worker; John Dailey, Givan's foreman; Don Guteknecht, communications supervisor and former supervisor of Givan; Robert Sayers, communications field engineer, co-worker and childhood acquaintance of Givan; Kurt Olson, foreman in the Electronic Control Division, Givan's co-worker; Charles Owens, Givan's subordinate in the Electronic Control Group; Donald Taylor, maintenance foreman and co-worker; Don French, Givan's subordinate; Rich-

ard Rubio, Givan's subordinate; Michael Henry, Givan's subordinate; Robert Baker, co-worker and forty-year acquaintance; Donald Mulligan, Water Regulation and Treatment superintendent; and Jerry Julian, Givan's subordinate.

6. While we agree with the City Manager that testimony of co-workers is of limited probative value in determining what impact Givan's conviction would have on his interaction with others in the workplace, because those individuals may or may not work with Givan in the future, we note that not all Givan's co-workers supported his retention.

Finally, we note that City management was unanimous in its belief that retaining Givan would adversely impact the integrity of the City. The management officials voiced concern that Givan's retention would be construed by the public as indifference to the crime Givan committed. Edward Bailey testified that Givan expressed "the disgrace that this brought to his family, to his church, to his friends." From this Bailey concluded that "[c]ertainly if it brings disgrace to family and friends and church, it must bring disgrace to the City itself." The Deputy City Manager of Utilities, James Phillips, testified that Givan's retention was likely to adversely affect public perception of the City because an earlier decision to retain an employee convicted of shoplifting created "a public outcry that was unbelievable, both in the newspaper, direct to the City Council, and from employees who came to me who were quite concerned that the City was going to keep these [sic] type of people on board." We find that these concerns expressed by City management and the rationale supporting them are reasonable.

While there was some testimony from Givan's co-workers and supervisors expressing the belief that the public would not view Givan's retention as improper, many expressed no opinion. Furthermore, we find that the City reasonably could have given more weight to the views of management officials who were responsible for personnel decisions and whose jobs entail representing the City before the public.

■ Taken as a whole, we find that the record in this case reveals that the City considered the factors and made the necessary findings required by the PPPM in its decision to discharge Givan from City employment. We also find that there was competent evidence in the record to support the City's findings. Accordingly, we hold that the City did not exceed its jurisdiction or abuse its discretion in discharging Givan.[7]

## B.

■ Givan raised as a counterclaim to the City's request for review under C.R.C.P. 106 that the City violated his right to substantive due process under the United States Constitution because the City's decision to terminate his employment was arbitrary and capricious. He argued that this violation of his constitutional rights gave rise to a cause of action under 42 U.S.C. § 1983. On appeal to this court, he argues that because the lower courts found that his dismissal was an abuse of discretion by the City, the court of appeals erred in denying his motion for summary judgment on his section 1983 claims.[8]

The court of appeals held that public employees' rights to substantive due process protected them from arbitrary dismissal. However, the court held that Givan had failed to make out a section 1983 claim with respect to the City's decision to terminate his employment. The court found that the City could not be held vicariously liable for arbitrary decisions made by its employees under section 1983. Instead, Givan must demonstrate that the decision represented City policy. City policy, the court determined, was set out in the PPPM. The court found that since enforcement of the policy ultimately rests with the municipal judge, the municipal court is the "policy maker" for purposes of section 1983, not the City. The City thus could not be held liable for the City Manager's decision to terminate Givan. The court nevertheless found that Givan had stated a claim based on the City's decision not to reinstate Givan during its action for C.R.C.P. 106 review of the municipal court's decision.

7. Givan raises an independent argument that in order to discharge an employee based on off-duty conduct the City must demonstrate a nexus between the off-duty conduct and a significant adverse impact on legitimate employer interests. He argues that the City has failed to establish this nexus. We assume for purposes of argument that such a nexus must be shown. In finding that competent evidence in the record supports the City's determination that Givan's conviction of felony incest (1) rendered him unfit to perform his job and (2) brought disrepute upon the City, we have found that this nexus exists between Givan's off-duty conduct and the City's interests. Givan does not challenge the legitimacy of the City's interests in its reputation and its employees' job performance.

8. Because issues 2 and 4 on which we granted certiorari address the same claim, we will address them together.

It held that "because the determination of this issue will rest upon factual considerations, we conclude that the grant of summary judgment upon this counterclaim was not justified."

We agree with the court of appeals that Givan's section 1983 claim based on his discharge was properly dismissed. As set out above, the City's decision to terminate Givan was properly based on the standards supplied by the PPPM and was supported by competent evidence in the record. Assuming for purposes of argument that Givan's continued employment were protected by substantive due process rights, the City's decision therefore was not arbitrary and in fact afforded him substantive due process. Accordingly, we decline to reach the as-yet open question of whether a public employee has a right to continued employment that is protected by substantive due process,[9] or whether the City Manager's decision represents City policy for purposes of section 1983 analysis.

■ However, we disagree that Givan properly raised a claim based on the City's failure to reinstate him while the present action is pending. Givan did not raise this issue either before the trial court or before the court of appeals. Nor does Givan raise this issue on appeal to this court. We therefore find that the court of appeals erred in deciding an issue that was not before it and that was not briefed or argued by the parties. Accordingly, we hold that the trial court properly dismissed Givan's entire section 1983 claim.

## C.

■ The final issue raised by the City on appeal is whether the court of appeals erred in finding that the district court abused its discretion in refusing to allow Givan to amend his pleadings to include a breach of contract counterclaim. We find that we need not address this question in light of our determination that Givan's discharge was not arbitrary and capricious.

In his proposed counterclaim Givan alleged that (1) Givan's employment contract with the City provided that he would not be terminated without cause; (2) he was terminated without cause; and (3) that his termination was "willful and wanton." By finding that the City manager's decision to discharge Givan was not in excess of his jurisdiction and was not an abuse of discretion we implicitly found that Givan was terminated for cause. Accordingly, we have resolved the issue raised in Givan's breach of contract counterclaim in the City's favor and any error by the trial court in disallowing Givan's amendment did not affect the outcome of this case and was thus harmless.

## III.

In conclusion, we reverse the judgment of the court of appeals and hold that the City Manager's decision to discharge Givan was neither in excess of his jurisdiction nor an abuse of discretion. In light of this holding, we affirm the trial court's dismissal of Givan's due process and section 1983 claims. For the same reason, we decline to reach the question of whether the trial court abused its discretion in refusing to allow Givan to amend his pleadings to include a counterclaim that the City had willfully violated its contract of employment with Givan. Accordingly, we return the case to the court of appeals with directions to remand it to the district court for entry of judgment for the City.

■

9. Givan does not argue that the criteria for discharge set out in the PPPM fail to provide substantive due process. He argues only that the City Manager's decision was unsupported by the evidence.